The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Arnold R. TRUJILLO, Defendant–
Appellant.

No. 01CA1558.

Colorado Court of Appeals,
Div. III.

Jan. 16, 2003.

Rehearing Denied April 24, 2003.

Certiorari Denied Aug. 25, 2003.

Ken Salazar, Attorney General, Katherine A. Hansen, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Julie Iskenderian, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge NIETO.

Defendant, Arnold R. Trujillo, appeals the judgment of conviction entered on a jury verdict finding him guilty of second degree burglary. He also appeals his sentence. We reverse part of the restitution order and otherwise affirm.

The victim of this burglary was awakened by a noise in his house during the early morning hours. He turned on lights in his bedroom and the adjoining hallway and saw a man standing in the doorway of the bedroom across the hall. He confronted the intruder, who soon fled the house.

The victim's next-door neighbor saw someone get out of a taxi and enter the victim's house. Approximately ten minutes later, he observed the intruder run out the front door. The neighbor followed as the intruder ran

and walked through the neighborhood, but eventually lost sight of him. However, the neighbor contacted a police officer at the scene and described the intruder.

Shortly thereafter, another officer contacted defendant approximately four blocks from the victim's house. The victim and the neighbor were each escorted to that location to determine whether they could identify defendant. The victim positively identified defendant as the intruder, and the neighbor stated that defendant's height, weight, and clothing generally matched that of the man he had seen.

Defendant was convicted of second degree burglary after a jury trial. He was sentenced to twenty years in the Department of Corrections and ordered to pay restitution. This appeal followed.

### I.

Defendant contends that the trial court erred in admitting evidence identifying him as the burglar because it was tainted by an unreliable and unduly suggestive one-on-one identification procedure. He argues that the procedure violated his right to due process. We disagree.

■ While one-on-one showups are viewed with disfavor, they are not per se violations of due process. Such a procedure may be justified where immediate identification would facilitate an ongoing criminal investigation and where the police need an immediate determination of whether they should continue searching for a suspect. *People v. Mascarenas*, 666 P.2d 101 (Colo.1983).

■ In determining whether a particular showup violates a defendant's due process rights, a court must ascertain whether, under the totality of the circumstances, the identification was unreliable because the confrontation was unnecessarily and irreparably suggestive. The following factors are relevant in determining whether a one-on-one showup is unduly suggestive: the witness's opportunity to view the criminal at the time of the crime, the witness's degree of attention at the time of the crime, the accuracy of any prior description, the level of certainty at the showup, and the time between the crime and

the identification. *People v. Mascarenas, supra; People v. Young,* 923 P.2d 145 (Colo. App.1995).

■ The constitutionality of a pretrial identification procedure is a mixed question of law and fact. While the trial court's findings of historical fact are entitled to deference, an appellate court may give different weight to those facts and may reach a different conclusion in light of the legal standard. *Bernal v. People,* 44 P.3d 184 (Colo.2002).

■ Defendant filed a pretrial motion to suppress the identification evidence. At the hearing on the motion, both the victim and his neighbor testified. The victim identified defendant as the person he had seen inside his home. The neighbor did not attempt an in-court identification of defendant.

The trial court made the following findings of fact, which are supported by evidence in the record. The victim saw the intruder in his home in a lighted area. The victim had an "excellent opportunity" to see the intruder because he was near him and paying close attention to him. The victim's description of the intruder was "generic," but he saw the intruder's face. Defendant was stopped within a few blocks of the victim's residence, and the time between "the crime and confrontation was exceedingly short." When he was brought to the location where defendant was being detained, the victim was "absolutely certain" in his identification of defendant.

As to the neighbor, the court found that he had observed a person running from the victim's home, but never saw his face. The neighbor had given a description of that person's clothing that was similar to the clothing defendant was wearing. Like the victim, the neighbor was taken to the location where defendant was being detained. Based on the clothing defendant was wearing, the neighbor was "relatively sure" that defendant was the person he had seen running from the victim's home.

The trial court applied the correct legal standard and found that the pretrial identification procedures were not unduly suggestive. The court also found that the one-on-one showups were justified here because the

police needed to determine whether defendant was the suspect or whether they should continue searching. The court determined, under the totality of the circumstances, the identification procedures were not so impermissibly suggestive that irreparable misidentification was substantially likely.

Based on our review of the record, we conclude that the trial court's findings regarding the relevant factors are supported by substantial evidence. Moreover, we agree with the trial court that under the totality of the circumstances the identification was not unreliable because the confrontation was not unnecessarily and irreparably suggestive.

In light of this conclusion, we need not reach defendant's contention that the victim's in-court identification lacked an independent basis. *See People v. Borrego,* 668 P.2d 21 (Colo.App.1983).

Accordingly, the trial court did not err in admitting evidence identifying defendant as the burglar.

## II.

Defendant contends that the trial court erred in admitting his statements to the police because he was in custody and had not been advised of his rights under *Miranda.* We are not persuaded.

■ For statements made during custodial interrogation to be admissible, the police must have advised the suspect of his or her constitutional rights. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Two requirements trigger the need for a *Miranda* advisement: the suspect must be in custody, and the statement must be the product of a police interrogation. *People v. Reddersen,* 992 P.2d 1176 (Colo. 2000).

■ A defendant is in custody for the purpose of *Miranda* warnings if he or she was formally arrested or, based on the totality of the circumstances, a reasonable person in the defendant's position would have felt that his or her freedom of action had been curtailed to a degree associated with a formal arrest. *People v. Mangum,* 48 P.3d 568 (Colo.2002). An investigatory stop is a seizure for purposes of the Fourth Amendment, but a person subject to an investigatory stop is not necessarily in custody for purposes of *Miranda. People v. Young, supra.*

■ The following factors are relevant in determining whether a suspect is in custody under the totality of the circumstances:

> The time, place and purpose of the encounter; the persons present during the interrogation; the words spoken by the officer to the defendant; the officer's tone of voice and general demeanor; the length or mood of the interrogation; whether any limitation of movement or other form of restraint was placed on the defendant during the interrogation; the officer's response to any questions asked by the defendant; whether directions were given to the defendant during the interrogation; and the defendant's verbal or nonverbal response to such directions.

*People v. Thiret,* 685 P.2d 193, 203 (Colo. 1984); *People v. Taylor,* 41 P.3d 681, 692 (Colo.2002)(quoting *Thiret* with approval).

■ A trial court's determination of the historical facts surrounding a defendant's detention is entitled to deference and will not be disturbed on appeal if it is supported by competent evidence in the record. However, the determination of custody for *Miranda* purposes is a mixed question of fact and law, and the application of the controlling legal standard to the facts established by the evidence and found by the trial court is subject to de novo appellate review. *People v. Matheny,* 46 P.3d 453 (Colo.2002).

■ Here, the trial court found that the officer was responding to a report of the burglary when he saw defendant running a few blocks from the crime scene. The officer stopped his vehicle near defendant, but did not use his overhead lights. In a conversational tone, the officer asked defendant to come over to him, and then he asked defendant some questions about his presence in the area. The officer did not display his weapon or make any other show of force. The conversation lasted only a few minutes, and defendant was not restrained in any way. After the conversation, the officer handcuffed defendant based on a report from a fellow

officer. Defendant was formally arrested after the victim identified him as the burglar.

These findings are supported by the evidence in the record. From these findings we conclude, as did the trial court, that defendant was not in custody while he was speaking with the police officer.

■ Defendant argues that he was in custody because the officer handcuffed him. However, this restraint occurred after defendant made his statements. "[T]he crucial consideration is the degree of coercive restraint to which a reasonable citizen believes he is subject *at the time of questioning.*" *People v. Breidenbach*, 875 P.2d 879, 887 (Colo.1994)(quoting *People v. Taylor*, 178 Cal.App.3d 217, 223 Cal.Rptr. 638, 645 (1986)). Thus, the handcuffs could not have had a coercive effect on defendant's decision to answer the officer's questions.

Accordingly, the trial court properly admitted evidence of defendant's statements.

### III.

Defendant contends that prosecutorial misconduct deprived him of due process and his right to a fair trial. He argues that during closing argument, the prosecutor improperly misstated the evidence and interjected his personal belief regarding the veracity of defendant's statements. We disagree.

■ In determining whether a prosecutor's statements constitute inappropriate argument, a trial court must determine whether the statements in all probability influenced the jury's result or affected the fairness of the proceedings. Such a determination is generally within the trial court's discretion. *Harris v. People*, 888 P.2d 259 (Colo.1995).

■ During closing argument, the prosecution referred to "witnesses saying that Mr. Trujillo did this," although there had been only one such witness. The prosecutor also stated that defendant "gave a story, a couple of stories which turn out not to be true," presumably referring to statements defendant made when initially contacted by the police.

We conclude that, considering the argument as a whole, the prejudice, if any, created by these comments did not result in a miscarriage of justice. *See People v. Doss,* 782 P.2d 1198 (Colo.App.1989)(prosecutors may draw reasonable inferences as to the demeanor and credibility of witnesses). Also, the trial court instructed the jury that closing statements should be considered only as argument and not as evidence. We presume that the jury followed these instructions. *See People v. Mandez,* 997 P.2d 1254 (Colo.App.1999).

Under these circumstances, defendant was not denied due process or a fair trial. *See People v. Mandez, supra.*

### IV.

■ Defendant contends that he was deprived of his right to a trial by jury because the trial court imposed an aggravated sentence pursuant to the discretionary provisions of § 18–1.3–401(6), C.R.S.2002, without the aggravating factors having been proved to a jury beyond a reasonable doubt. We disagree.

Defendant argues that the Supreme Court's holding in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), applies to the trial court's imposition of an aggravated sentence under § 18–1.3–401(6). However, this argument was rejected by a panel of this court in *People v. Allen,* 43 P.3d 689 (Colo.App.2001). *See also People v. Harrison,* 58 P.3d 1103 (Colo.App.2002); *People v. Ramos,* 53 P.3d 1178 (Colo.App. 2002). We find the reasoning set forth in *Allen* persuasive and adopt it here.

Defendant argues that we should reject *Allen* in light of *State v. Gould,* 271 Kan. 394, 23 P.3d 801 (2001). However, this argument was also considered by a panel of this court and rejected. *See People v. Rivera,* 62 P.3d 1056 (Colo.App.2002). Similarly, we reject defendant's argument here.

### V.

Defendant contends that the trial court abused its discretion in imposing an aggravated sentence of twenty years in the Department of Corrections. Again, we disagree.

■ Sentencing is a discretionary function. Because the trial court is more familiar with the defendant and the circumstances of the case, it is accorded wide latitude in its sentencing decisions, and its conclusion will not be disturbed absent a clear abuse of discretion. *People v. Eurioste*, 12 P.3d 847 (Colo.App.2000).

■ A trial court may impose a sentence outside the applicable presumptive range only if, based on the presentence report and the evidence in the record of the sentencing hearing, extraordinary aggravating or mitigating circumstances are present. Section 18–1.3–401(6). The fact that a sentencing court finds aggravating factors to be more compelling than any arguably mitigating factors does not constitute an abuse of discretion or indicate that the trial court failed to consider evidence of mitigation. The circumstances of a crime alone may justify the imposition of a lengthy sentence. *People v. Eurioste, supra.*

The trial court found that an aggravated sentence of twenty years was warranted because the victim was confronted in his home during the burglary. The court also noted that the crime occurred in the middle of the night and that it had an extraordinary impact on the victim, a seventy-year-old man in "marginal health." Finally, the court found that defendant had an extensive criminal history. These findings are supported by the evidence presented at the sentencing hearing and the presentence report, which included a victim impact statement as required by § 16–11–102(1)(a), C.R.S.2002.

Under these circumstances, we find no abuse of discretion in the sentence imposed.

## VI.

■ Defendant contends that the trial court erred in ordering him to pay restitution for the cost of installing a burglar alarm system in the victim's home. We agree.

The court shall award restitution if it finds that the victim of a crime suffered a pecuniary loss. *See* § 18–1.3–603(1), C.R.S.2002 (formerly § 16–18.5–103(1)(d)). "Restitution," as applicable here, is defined as:

any pecuniary loss suffered by a victim, and includes but is not limited to all out-of-pocket expenses, interest, loss of use of money, anticipated future expenses, rewards paid by victims, money advanced by law enforcement agencies, adjustment expenses, and other losses or injuries proximately caused by an offender's conduct and that can be reasonably calculated and recompensed in money.

Section 18–1.3–602(3)(a), C.R.S.2002 (formerly § 16–18.5–102(3)(a)).

The legislative declaration to the restitution statutes states:

(1) The general assembly finds and declares that:

(a) Crime victims endure undue suffering and hardship resulting from physical injury, emotional and psychological injury, or loss of property;

(b) Persons found guilty of causing such suffering and hardship should be under a moral and legal obligation to make full restitution to those harmed by their misconduct;

. . .

(e) An effective criminal justice system requires timely restitution to victims of crime and to members of the immediate families of such victims in order to lessen the financial burdens inflicted upon them, to compensate them for their suffering and hardship, and to preserve the individual dignity of victims;

. . . .

(2) . . . . This part 6 shall be liberally construed to accomplish all such purposes.

Section 18–1.3–601, C.R.S.2002 (formerly § 16–18.5–101).

■■■ Restitution is intended to make the victim whole and specifically includes repayment of actual pecuniary loss the victim sustained as the direct result of the defendant's criminal conduct. "A trial court has broad discretion in determining the appropriate terms and conditions of restitution orders, and absent a gross abuse of discretion, the trial court's ruling will not be disturbed

on appeal." *People v. Estes,* 923 P.2d 358, 360 (Colo.App.1996).

█ The precise extent of a victim's pecuniary loss that can be the subject of an order for restitution is difficult to define because the characteristics of victims and the nature of criminal acts are nearly unlimited. *See People v. Lunsford,* 43 P.3d 629 (Colo.App.2001)(insurer-victim entitled to restitution for amounts paid to crime victims for noneconomic damages pursuant to an insurance contract); *People v. Wright,* 18 P.3d 816 (Colo.App.2000)(legal expenses incurred by victim in filing replevin action to recover personal property were the direct result of defendant's criminal conduct); *People v. Witt,* 15 P.3d 1109 (Colo.App.2000)(department of social services entitled to restitution for employee's time spent investigating defendant's conduct, computing losses, and preparing documents for prosecution, all relating to defendant's fraudulent acquisition of food stamps); *People v. Estes, supra* (counseling expenses for victim's immediate family members who sustained psychological trauma as a result of defendant's criminal conduct were compensable as restitution); *People v. Duvall,* 908 P.2d 1178 (Colo.App.1995)(value of time spent by drugstore employees investigating theft of drugs from store was appropriately included in restitution award); *People v. Dillingham,* 881 P.2d 440 (Colo.App.1994)(reward money for information leading to the recovery of stolen property was properly included in the restitution order); *People v. Phillips,* 732 P.2d 1226 (Colo.App.1986)(defendant properly ordered to pay restitution for adjustment expenses, investigation costs, and attorney fees incurred by insurer-victim in processing of claim).

While a precise definition of the losses includable in a restitution order may not be possible, the definition of restitution in § 18–1.3–602(3), C.R.S.2002, places limits on what may be included. The loss must be a pecuniary loss, and it may be one specifically mentioned in that statute or some other loss or injury that is "proximately caused by an offender's conduct and that can be reasonably calculated and recompensed in money." Section 18–1.3–602(3)(a).

The definition of restitution is easily applied to losses that were directly caused by an offender's conduct, such as property unlawfully taken or damaged and personal injuries inflicted by the offender. However, when the loss is attenuated from the offender's conduct, application of the definition of restitution becomes more difficult and may require more precise findings to justify the restitution order.

█ Here, the victim was permitted to make a statement during the sentencing hearing. He told the court,

I'm 70 years-old, and the life I'm living now is I get jittery if I hear any noise or cracks and everything. And I had to put a burglar alarm and change the locks of my doors to have peace of mind, but you don't have peace of mind when that happens to you.... I don't know, just been nerves and everything. I haven't slept too good. Like I say, new different surroundings around you, just I'm scared. Thank you. [sic]

The trial court then awarded the victim restitution for the cost of the alarm system.

The loss the victim experienced was his diminished feeling of security. This loss may be common to most victims of crime, and it is not, under ordinary circumstances, a loss "that can be reasonably calculated and recompensed in money." *See* § 18–1.3–602(3)(a).

Crime victims' feelings of insecurity could have multiple causes, and the solutions they select are very subjective and potentially numerous and varied. Thus, a victim's effort to find peace of mind and a sense of personal security is attenuated from the offender's conduct. Therefore, when a victim requests restitution for such an attenuated loss, the trial court must carefully consider whether it meets the statutory definition of restitution.

Here, the trial court's findings do not support any loss by the victim other than a generalized feeling of insecurity. The trial court concluded that the burglar alarm system "is tantamount to the need for counseling." However, the court made no findings to support this conclusion. Further, the victim's loss was not one specifically mentioned

in § 18–1.3–602(3), and the court made no findings to show the loss was one that could be "reasonably calculated and recompensed in money." Therefore, on this record, the order for restitution of the cost of the burglar alarm system cannot stand. On remand, the trial court should reconsider the issue of restitution, make findings of fact, and determine if the victim's loss is one that falls within the definition of restitution in § 18–1.3–602(3).

The judgment and sentence are affirmed, except that the order of restitution is reversed insofar as it includes the cost of the burglar alarm system, and the case is remanded for reconsideration of the restitution order.

Judge NEY and Judge KAPELKE concur.