The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Stacey Lee BRYANT, Defendant–Appellant.

No. 04CA0085.

Colorado Court of Appeals, Div. I.

April 7, 2005.

Certiorari Denied Nov. 15, 2005.

Defendant was charged with extortion based on alleged threats he and another individual, known only as "Jose," made to the victim. Shortly thereafter, the victim quit his job and moved to another state.

Defendant subsequently pleaded guilty to an added count of attempted extortion, the original charges against him were dismissed, and he was sentenced to three years probation. As a condition of his probation, defendant was ordered to pay restitution for the victim's moving expenses, the charges the victim incurred for terminating his apartment lease early, and the victim's "lost wages." This appeal followed.

The court shall award restitution if it finds that the victim of a crime suffered a pecuniary loss. *See* § 18–1.3–603(1), C.R.S.2004. However, restitution is intended to make the victim whole and specifically includes repayment of actual pecuniary loss the victim sustained as the *direct result* of the defendant's criminal conduct. Therefore, the loss may be one specifically mentioned in the statute or some other loss or injury that is "proximately caused by an offender's conduct and that can be reasonably calculated and recompensed in money." Section 18–1.3–602(3)(a), C.R.S. 2004.

"Proximate cause" for purposes of restitution has been defined as "a cause which in natural and probable sequence produced the claimed injury" and "without which the claimed injury would not have been sustained." *See People v. Clay*, 74 P.3d 473, 475 (Colo.App.2003)(quoting *People v. Stewart*, 55 P.3d 107, 116 (Colo.2002), and CJI–Crim. 9:10, 9(3) (1983)).

John W. Suthers, Attorney General, Wendy J. Ritz, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Todd E. Mair, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

LOEB, J.

Defendant, Stacey Lee Bryant, appeals the order of restitution imposed as part of his sentence to probation. We affirm.

## I.

Relying on *People v. Trujillo*, 75 P.3d 1133 (Colo.App.2003), defendant contends the trial court erred in ordering restitution because the victim's losses were too attenuated from his criminal conduct. We disagree.

In *People v. Trujillo, supra*, the defendant was convicted of burglary and was ordered to pay restitution for the cost of installing an alarm system in the victim's home. A division of this court concluded that, with respect

to this portion of the restitution order, the trial court's findings did not support any loss by the victim "other than a generalized feeling of insecurity" and that such loss was too attenuated from the defendant's criminal conduct to support the order. Therefore, the division reversed that portion of the order and remanded the case to the trial court with directions to "reconsider the issue of restitution, make findings of fact, and determine if the victim's loss is one that falls within the definition of restitution in § 18–1.3–602(3)." *See People v. Trujillo, supra,* 75 P.3d at 1140–41.

However, the trial court here found that unlike the "generalized feeling of insecurity" in *Trujillo,* the victim's loss was caused by a "specific threat" that was "still outstanding." More specifically, the court found that defendant and "Jose" had acted together; that, although only one of them had made the verbal threat to the victim, they were both involved in more than one contact with the victim; and that, although both of them had access to information regarding the victim's residence and employment, only one of them (defendant) had been "picked up." Based on these findings, the court concluded that "defendant's actions were the proximate cause" of the victim's efforts to avoid the outstanding threat against him and that restitution for those efforts was appropriate.

We conclude the record supports the trial court's findings, and we agree with its reasoning. Therefore, we reject defendant's assertion that his criminal conduct was too attenuated from the victim's lost sense of security to warrant a restitution order.

In light of this conclusion, we necessarily reject defendant's related contention that restitution for the victim's lost sense of security is "tantamount to damages for mental pain and suffering" and is, therefore, statutorily prohibited because it is too attenuated from his criminal conduct. *See* § 18–1.3–602(3)(a), C.R.S.2004 (prohibiting restitution for "mental pain and suffering").

## II.

■ In the alternative, defendant contends the trial court erred in ordering restitution for "lost wages" because § 18–1.3–602(3)(a) expressly prohibits restitution for "loss of future earnings." Again, we disagree.

Because no reported Colorado appellate decision has interpreted the phrase "loss of future earnings" in the criminal restitution context, we must look elsewhere for the meaning of that term. *See Southard v. Miles,* 714 P.2d 891, 898 (Colo.1986)(defining the phrase "mental incompetence" in medical malpractice statute according to definition in statute governing the care and treatment of the mentally ill); *Sch. Dist. No. 1 v. Cornish,* 58 P.3d 1091, 1097 (Colo.App.2002)(concluding that the meaning of "lacked substantial justification" in § 13–17–102, C.R.S.2004, should apply in the context of an award of attorney fees pursuant to § 22–63–302(10)(e), C.R.S.2004); *cf. Bertrand v. Bd. of County Comm'rs,* 872 P.2d 223, 228 (Colo.1994)(the interpretation of terms in one statute by reference to the terms used in an unrelated statute and in a different context is an unreliable means of ascertaining legislative intent).

Although the phrase "lost wages" is not defined in the restitution statute, or anywhere else in the criminal code, the comparable phrase "loss of earnings" is generally defined in the civil context as earnings that were not received from the date of the injury to the date damages for that injury are determined. *See, e.g.,* §§ 13–64–202(6), 13–64–204(1)(a)(III), C.R.S.2004 ("past damages," such as "loss of earnings," means "damages that have accrued before the damages findings are made"). In contrast, the phrase "loss of future earnings" is generally defined as earnings that, because of the opposing party's conduct, are not expected to be received from the date damages are determined forward. *See, e.g.,* §§ 13–64–202(2), 13–64–204(1)(b)(III), C.R.S.2004 ("future damages," such as "loss of future earnings," means damages that "the trier of fact finds will accrue after the damages findings are made"). *See also Black's Law Dictionary,* 548 (8th ed.2004)(distinguishing between past lost earnings and future lost earnings); *J.C. Penney Co. v. Brown,* 155 Colo. 212, 393 P.2d 575 (1964)(noting difference between earnings lost prior to trial and those that plaintiff may lose in the future); *Nowlin v. Kansas*

*City Pub. Serv. Co.,* 58 S.W.2d 324 (Mo.App.1933)(distinguishing loss of past earnings from loss of future earnings). We conclude that these definitions are equally applicable in the criminal restitution context.

Thus, for purposes of criminal restitution, we conclude that "lost wages" are wages not received by the victim from the date the crime was committed to the date restitution is imposed, or sooner if the victim is comparably employed prior to that date, whereas "loss of future earnings" are earnings not expected to be received by the victim after restitution is imposed. Under this definition, the trial court did not violate § 18–1.3–602(3)(a) when it ordered defendant to pay restitution for the victim's lost wages.

The order is affirmed.

Judge MARQUEZ and Judge CARPARELLI concur.