232 P.3d 182 (2009)
The PEOPLE of the State of Colorado, Petitioner-Appellee,
In the Interest of D.W., Juvenile-Appellant.
No. 08CA2223.
Colorado Court of Appeals, Div. III.
September 3, 2009.
Rehearing Denied October 22, 2009.
*183 John W. Suthers, Attorney General, Elizabeth Rohrbough, Senior Assistant Attorney General, Denver, Colorado, for Petitioner-Appellee.
Douglas K. Wilson, Colorado State Public Defender, Angela Brant, Deputy State Public Defender, Denver, Colorado, for Juvenile-Appellant.
Opinion by Judge ROMÁN.
D.W., a juvenile, appeals the restitution order entered in a juvenile delinquency adjudication based on his guilty plea admitting that he committed acts which, if committed by an adult, would constitute the offense of sexual assault on a child. The central issue on appeal is whether the People proved that D.W.'s delinquent conduct was the proximate cause of losses incurred by the victim's parents when they sold their house so that the victim would no longer have to live near D.W. We conclude the People did not meet this burden because there is no competent evidence in the record establishing that D.W. posed an ongoing and specific threat to the victim. Therefore, we vacate the restitution order and remand for entry of a modified order.
A trial court has broad discretion in determining the terms and conditions of a restitution order, and its ruling will not be disturbed absent an abuse of discretion. People v. Smith, 181 P.3d 324, 325 (Colo.App.2007); People v. Reyes, 166 P.3d 301, 302 (Colo.App.2007).
The People have the burden of establishing restitution by a preponderance of the evidence. People v. Pagan, 165 P.3d 724, 729 (Colo.App.2006); People v. Harman, 97 P.3d 290, 294 (Colo.App.2004).
Section 18-1.3-602(3)(a), C.R.S.2008, of the restitution statute defines restitution as follows:
any pecuniary loss suffered by a victim [which] includes but is not limited to all out-of-pocket expenses, interest, loss of use of money, anticipated future expenses, rewards paid by victims, money advanced by law enforcement agencies, money advanced by a governmental agency for a service animal, adjustment expenses, and other losses or injuries proximately caused by an offender's conduct and that can be reasonably calculated and recompensed in money. "Restitution" does not include damages for physical or mental pain and suffering, loss of consortium, loss of enjoyment of life, loss of future earnings, or punitive damages.
Accordingly, if the loss claimed is not specifically mentioned in the restitution statute, it must be a loss that was proximately caused by the offender's conduct. Reyes, 166 P.3d at 303.
"`Proximate cause' has been defined for purposes of restitution as `a cause which in natural and probable sequence produced the claimed injury' and `without which the claimed injury would not have been sustained.'" *184 People in Interest of D.S.L., 134 P.3d 522, 527 (Colo.App.2006) (quoting People v. Clay, 74 P.3d 473, 475 (Colo.App.2003)).
Here, the essential facts related to the delinquency adjudication are not in dispute. In January 2007, the victim (then age fourteen) told his parents that, on approximately four separate occasions in 2000, D.W. had forced him to perform and receive oral sex (at the time of the abuse, the victim was eight, D.W. was twelve, and both boys lived on the same street). The victim also told his parents that, in 2002, D.W. had threatened to beat him up if he disclosed what had occurred.
As part of a police investigation, the victim called D.W. (who still lived on the same street) and asked him to apologize. D.W. apologized to the victim for having made him perform oral sex. After D.W. was contacted by the police, he admitted that he had engaged in oral sex with the victim.
D.W. pleaded guilty, as set forth above, pursuant to a plea bargain in which other delinquency charges were dismissed. Following the imposition of sentence (which is not at issue in this appeal), in May 2008 the magistrate convened a hearing to address D.W.'s objection to the amount of restitution sought by the victim's family.
The victim's mother testified that she and her husband had sold their home because of "the threat and intimidation that [they] were under living next to the perpetrator." She testified the victim had experienced post-traumatic stress disorder, and that they had obtained a permanent civil protective order against D.W. in April 2007 (after initially obtaining a temporary protective order in March 2007). However, the People did not introduce a copy of the protective order into evidence, and the victim's mother did not testify that the order was based on allegations distinct from those underlying this delinquency action. Further, she admitted that D.W. had not violated the terms of the order in the fourteen months since it had first entered.
The victim's mother sought restitution for numerous expenses related to preparing the house for sale, including things such as: new carpeting, landscaping materials, and painting supplies. In addition, she testified that she and her husband had paid their real estate agent a commission of $15,157. However, she did not testify as to the sale date, and she did not indicate whether they sold the house at a profit or a loss.
The victim's father testified that he missed several days of work as a result of the victim's revelation of the abuse, and that he lost $2,943.20 in wages. But he was unable to specify how many of the missed work days he spent helping the victim, and how many of those days he spent preparing the house for sale.
The magistrate ordered D.W. to pay: (1) $6,694.30 (for materials purchased to ready the home for sale); (2) $15,157 (for the real estate agent's commission); (3) $2,943.20 (for the father's lost wages); and $500 (for the victim's counseling servicesan amount that is not at issue on appeal). The magistrate reasoned that D.W.'s unlawful conduct in 2002 was the proximate cause of the enumerated "losses" stemming from the home sale because (1) pursuant to section 13-14-102(4)(a), (9)(a), C.R.S.2008, the civil restraining order could not have issued absent a showing of an imminent and ongoing threat; and (2) if the victim's family had remained in their house, "contact between [D.W.] ... and the victim . . . would obviously not be isolated or limited[,] but instead continuous and unavoidable."
On district court review, the court acknowledged the absence of any evidence at the restitution hearing indicating that D.W. had threatened the victim or his family after the delinquency petition was filed. Similarly, the district court recognized that the magistrate had not reviewed the court file for the civil restraining order case. Nevertheless, the district court upheld the magistrate's proximate cause determination with respect to the house sale expenses because "a court of competent jurisdiction found such facts in existence to issue the orders that require a stringent standard." The court also upheld the other portions of the magistrate's order, and D.W. then filed this appeal.
Our analysis is guided by three cases in which divisions of this court have analyzed *185 whether an offender's unlawful conduct was the proximate cause of losses related to the mitigation of a victim's fear. First, in People v. Trujillo, 75 P.3d 1133, 1140 (Colo.App.2003), the division reversed an order requiring a defendant convicted of burglary to pay restitution for the cost of installing an alarm system in the home of the elderly victim who testified the crime had caused him to become "jittery" and "scared." Concluding that restitution for such "a generalized feeling of insecurity" was not authorized by section 18-1.3-602(3)(a), the division observed: "Crime victims' feelings of insecurity could have multiple causes, and the solutions they select are very subjective and potentially numerous and varied. Thus, a victim's effort to find peace of mind and a sense of personal security is attenuated from the offender's conduct." Trujillo, 75 P.3d at 1140 (remanding for reconsideration).
Next, in People v. Bryant, 122 P.3d 1026, 1027 (Colo.App.2005), the division upheld an order requiring a defendant convicted of extortion to pay restitution for the victim's moving expenses, the charges he incurred for terminating his apartment lease early, and his lost wages. In distinguishing Trujillo, the division concluded the defendant's criminal conduct was the proximate cause of the victim's losses because the trial court had made a finding that the victim had moved in response to a specific threat that was still outstanding due to the fact that the defendant's accomplice (1) had participated in the threatening contacts with the victim; (2) remained at large; and (3) knew where the victim lived and worked. Id.
Most recently, in Reyes, 166 P.3d at 302, the division set aside a restitution order requiring a defendant convicted of burglary to pay for the installation of interior locks by the victim (a charitable organization whose building did not have interior locks at the time of the burglary). Noting that there was no evidence suggesting the defendant posed an ongoing threat to the victim, the division concluded that the defendant's criminal conduct was not the proximate cause of the expense the victim had incurred by installing the locks as a prophylactic measure to protect against future break-ins.
We are persuaded by the reasoning of Trujillo, Bryant, and Reyes, and we perceive no disharmony in the holdings. Together, these three cases recognize a significant distinction: if a victim incurs expenses to avoid or mitigate the consequences of a specific and ongoing threat related to the offender's unlawful conduct, such expenditures qualify as compensable restitution under section 18-1.3-602(3)(a); however, expenditures resulting from a generalized feeling of insecurity are too attenuated from the offender's conduct, and thus do not qualify.
Applying that distinction to this case, we conclude the court abused its discretion by ordering D.W. to pay for expenditures related to the house sale because the People did not carry their burden of proving that the victim faced a specific and ongoing threat sufficient to necessitate the family's relocation. Although we acknowledge that D.W. threatened the victim after the abuse occurred in 2002, there is no evidence establishing that those threats had continuing vitality when the victim reported the abuse in 2007. To the contrary, the evidence suggests that D.W. was apologetic when the victim confronted him.
Further, the court erred by speculating about the underlying basis of the civil protective order, which may have been issued solely on the threats that D.W. made in 2002. See § 13-14-102(4)(a), C.R.S.2008 ("the court shall not deny a petitioner the relief requested solely because of a lapse of time between an act of abuse or threat of harm and filing of the petition for a protection order"); Reyes, 166 P.3d at 304 ("`[m]ore than speculation is required in order for the defendant to bear responsibility [for paying restitution] for the injury'") (quoting Cumhuriyet v. People, 200 Colo. 466, 469, 615 P.2d 724, 726 (1980)).
Moreover, by relying on the civil restraining order as a basis for finding a specific and ongoing threat sufficient to justify an award of restitution, the trial court essentially afforded the protective order preclusive effect without determining whether the requirements for issue preclusion had been satisfied. See generally People v. Conley, 804 P.2d 240, *186 243-44 (Colo.App.1990) (the elements of issue preclusion are: (1) the issue in the second proceeding must be identical to an issue that was actually and necessarily decided at the prior proceeding; (2) there must have been a final judgment on the merits at the prior proceeding; (3) there must be identity of parties or privity between parties against whom the doctrine is asserted; and (4) the party against whom the doctrine is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding).
The court also erred by hypothesizing that D.W. and the victim inevitably would have encountered each other if the victim's family had not moved from the neighborhood. This speculation presumes the protective order would not have been an effective deterrent to such contacta supposition that is directly contradicted by the testimony of the victim's mother that D.W. had not violated the terms of the protective order. Although it is apparent that some portion of D.W.'s compliance with the protective order occurred while the victim was still living nearby, we are unable to quantify this period because the victim's parents did not testify as to the date of the house sale.
Accordingly, we conclude the court erred by ordering D.W. to pay for expenses related to the home sale because the People did not prove that these expenditures (totaling $21,851.30) were proximately caused by D.W.'s unlawful conduct. Nor should the court have required D.W. to pay restitution for lost wages based on days the victim's father missed work in order to ready the house for sale. Thus, on remand, the court shall reduce this latter portion of the restitution order so that it reflects lost wages only for those days when the father's absence from work was for the purpose of helping the victim.
Finally, because we conclude the People did not prove that D.W.'s unlawful conduct was the proximate cause of the house sale, we do not reach the question of whether, in the absence of any evidence indicating that the house was sold at a loss, the court erred by equating expenditures in furtherance of a sale with "losses" as defined by section 18-1.3-602(3)(a).
The order is vacated and the case is remanded for entry of a new order consistent with the views expressed in this opinion.
Judge DAILEY and Judge TERRY concur.