23CA0764 Peo v Foos 11-13-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0764
Adams County District Court No. 22CR2988
Honorable Robert W. Kiesnowski, Jr., Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Talon Michael Foos,

Defendant-Appellant.

---

ORDER AFFIRMED

Division V
Opinion by JUDGE YUN
Freyre and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 13, 2025

---

Philip J. Weiser, Attorney General, Marixa Frias, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, River B. Sedaka, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1 Talon Michael Foos appeals the district court's restitution order in the amount of $3,535.94. Foos argues that the order must be vacated because the prosecution failed to comply with a deadline in the restitution statute. Alternatively, he argues the restitution amount should be reduced because (1) the victim was not entitled to replacement value; (2) the prosecution failed to establish proximate cause; and (3) the victim did not mitigate damages. We disagree and affirm the restitution order.

## I. Background

¶ 2 On September 27, 2022, Thornton police found Foos asleep in a truck stolen from Montana. Inside the truck, police discovered drug paraphernalia, weapons, and firearm accessories. As a result, the People charged Foos with multiple drug- and weapon-related offenses, as well as aggravated motor vehicle theft.

¶ 3 On December 6, 2022, Foos entered into a plea agreement in which he pleaded guilty to possession of a controlled substance with intent to distribute and aggravated motor vehicle theft. As part of the plea agreement, he agreed to pay restitution. Specifically, he agreed to the following terms:

> I agree to pay any Court ordered
> restitution. . . . I agree that I am obligated to
> pay restitution as part of this plea agreement,
> and further agree that the amount of
> restitution will be determined within 91 days
> of sentencing unless that deadline is extended
> for good cause.

¶ 4 At the providency hearing, the court accepted Foos's guilty pleas. During the hearing, the prosecution advised the court that it "anticipate[d] restitution," and the court reserved the matter for sentencing. Immediately afterward, the judge asked Foos: "Do you understand that you will have to pay any restoration [sic] as a part of the plea agreement?" Foos responded, "Yes, Ma'am." Similarly, in his presentence interview, Foos reiterated that he could remedy the harm caused by his offense by "pay[ing] restitution to the victim."

¶ 5 At the sentencing hearing on February 8, 2023, the prosecution informed the court that it was seeking $3,789.95 in restitution. However, the prosecution had not yet filed the supporting documentation. The prosecution noted that it "was able to confirm [the restitution amount] this morning," though the record suggests the prosecution received the supporting

information — an email from the victim confirming his insurance settlement — on January 27, 2023.

¶ 6     The court entered an order finding Foos liable for restitution, with the amount to be determined later through a subsequent motion.  The court then granted the prosecution twenty-one days to file its motion for restitution and gave the defense fourteen days thereafter to file any objection.

¶ 7     The next morning, on February 9, 2023, the prosecution filed its restitution motion, requesting $3,789.95, along with supporting documentation.  After the victim transferred the title to his truck to his insurer, the insurer declared the truck to be a total loss due to potential drug contamination and paid him a total cash payment of $16,944.47.  Thus, the prosecution's request consisted of $500.00 for the insurance deductible and $3,289.95 for two after-market accessories: (1) a trailer hitch valued at $1,400.00 (including shipping) and (2) a front bumper valued at $1,889.95.  To substantiate the $3,289.95 figure, the prosecution offered screenshots of website prices for the accessories provided by the victim.

¶ 8    Foos filed an objection to the motion for restitution, and the court held a restitution hearing on March 24, 2023.  The court ordered restitution totaling $3,535.94, which included $1,889.95 for the bumper, $1,095.99 for the hitch (excluding shipping costs), $500.00 for the insurance deductible, and $50.00 for an insurance transfer fee.

¶ 9    Foos now appeals the restitution order, arguing that the order must be vacated or, at a minimum, reduced.  We begin by addressing whether the order must be vacated and then examine whether the amount should be reduced.

## II.    Restitution Order Vacatur

¶ 10    Foos argues that the district court's restitution order must be vacated because the prosecution did not provide available restitution information at sentencing, as required by section 18-1.3-603(2)(a), C.R.S. 2022,[1] and *People v. Weeks*, 2021 CO 75, ¶ 31.  Assuming arguendo that the district court erred by

---

[1] The restitution statute was recently amended to reduce the prosecution's deadline from ninety-one to sixty-three days, effective May 30, 2025.  Ch. 307, sec. 1, § 18-1.3-603, 2025 Colo. Sess. Laws 1606.  That amendment is inapplicable to this case.  We therefore rely, throughout this opinion, on the statute that was in effect at the time the court granted restitution.

excusing the prosecution's failure to provide the restitution information at sentencing, the error was harmless.

A.     Standard of Review and Applicable Law

¶ 11     The proper interpretation of the restitution statute is a question of law that we review de novo. *Weeks*, ¶ 13. Section 18-1.3-603 describes the process for obtaining restitution and imposes deadlines on the court and the prosecution. *Id.* at ¶ 7. To obtain restitution, a court must enter one of four orders at sentencing. *Id.* at ¶ 3. As relevant here, one option is an order "that the defendant is obligated to pay restitution, but that the specific amount of restitution shall be determined" at a later date. § 18-1.3-603(1)(b).

¶ 12     This later date is restricted by two statutory deadlines. The first deadline, subsection (1)(b), requires the court to determine the amount of restitution "within the ninety-one days immediately following the order of conviction, unless good cause is shown for extending the time period by which the restitution amount shall be determined." § 18-1.3-603(1)(b); *see Weeks*, ¶ 5.

¶ 13     The second deadline, subsection (2)(a), requires the prosecution to "compile [restitution] information" and "present this

information to the court prior to the order of conviction or within ninety-one days, if it is not available prior to the order of conviction." § 18-1.3-603(2)(a). "The court may extend this date if it finds that there are extenuating circumstances affecting the prosecuting attorney's ability to determine restitution." *Id.* In *Weeks*, the court interpreted subsection (2)(a) to mean the prosecution "should make a motion for restitution before or during the sentencing hearing." *Weeks*, ¶ 44.

¶ 14    When a district court fails to issue one of the four enumerated orders or fails to comply with its subsection (1)(b) deadline, the supreme court has held that the district court loses its authority to order restitution, requiring vacatur of the order. *See Snow v. People*, 2025 CO 32, ¶ 27 (vacating the district court's restitution order because it failed to enter one of the four enumerated orders by reserving the *issue* of restitution in its entirety beyond sentencing); *Weeks*, ¶ 47 (vacating the district court's restitution order because the court lost authority to order restitution after violating its subsection (1)(b) deadline).

¶ 15    However, other divisions of this court have held that when, as here, the district court orders restitution within its subsection (1)(b)

deadline, it retains its authority to impose restitution. *See People v. Martinez Rubier*, 2024 COA 67, ¶ 47; *People v. Brassill*, 2024 COA 19, ¶ 58 (*cert. granted* Aug. 4, 2025).[2]  Thus, when the district court retains its authority to order restitution, we review the court's decision to excuse the prosecution's failure to provide the available restitution information at sentencing for harmless error. *Martinez Rubier*, ¶¶ 42-48; *Brassill*, ¶¶ 56-63.

¶ 16    To determine whether the prosecution's violation of its statutory deadline requires vacatur of the restitution order under harmless error, we consider (1) the gravity of the deviation from statutory deadlines, "including a consideration of due process concerns," and (2) any prejudice to the defendant caused by the deviation. *Martinez Rubier*, ¶ 48 (citation omitted).

---

[2] The supreme court granted a writ of certiorari to determine "[w]hether, under *People v. Weeks*, 2021 CO 75, the district court loses authority to order restitution due to the prosecution's lack of compliance with section 18-1.3-603(2)(a) . . . and, thus, whether the court of appeals erred by applying harmless error review instead of vacating the restitution order." *Solano v. People*, No. 24SC704, 2025 WL 2591397, at *1 (Colo. Sept. 8, 2025) (unpublished order).

## B.    Discussion

¶ 17    Foos argues that, under *Weeks*, his restitution order "must be vacated" because the prosecution submitted the information supporting its requested amount of restitution one day after the sentencing hearing, in violation of its subsection (2)(a) deadline. Assuming the prosecution violated this deadline, we disagree that the correct remedy is vacatur for two reasons.

¶ 18    First, *Weeks* does not hold that the prosecution's failure to submit restitution information "prior to the order of conviction," in violation of subsection (2)(a), requires vacating the order. *See Weeks*, ¶ 47.  Rather, in *Weeks*, the court vacated the restitution order because the district court violated its subsection (1)(b) deadline when it determined the amount of restitution nearly a year after sentencing without making an express or timely finding of good cause to extend that deadline.  *Id.* at ¶ 45.  Under those circumstances, vacatur — not a harmlessness analysis — was the proper remedy because the district court lost its authority to impose restitution.  *See Snow*, ¶ 31 ("We chose the remedy of vacatur in *Weeks* because we could conceive of no other appropriate remedy when . . . the trial court, after entering a subsection (1)(b) order

8

finding restitution liability at sentencing, fails to comply with the ninety-one-day deadline and thus acts without authority in determining the amount of restitution.").

¶ 19     Here, by contrast, the district court entered its restitution order forty-four days after sentencing — well within its subsection (1)(b) deadline.  As in *Martinez Rubier*, ¶ 46, Foos

> does not cite, and we are unaware of, any reported Colorado case holding that a court lacks the authority to enter a restitution order by allowing *any* deviation from the restitution timetable specified in section 18-1.3-603, so long as the court ultimately enters its restitution order within the ninety-one-day deadline set forth in section 18-1.3-603(1)(b).

Thus, because the district court retained its authority, we conclude that vacatur was not required by *Weeks*.

¶ 20     Second, under the harmless error analysis, vacatur is not required because the prosecution missed the statutory deadline by only one day and Foos suffered no resulting prejudice.  As for the gravity of the deviation, Foos insists the prosecution was required to submit the supporting information for its restitution request during sentencing, unless that information was unavailable.  But here, the prosecution provided the restitution amount at the sentencing

9

hearing and submitted the supporting information the next morning. At worst, the prosecution's deviation from the statutory deadline was one day, and thus of negligible gravity.

¶ 21 As for prejudice, Foos does not argue that the one-day delay caused him any harm. He was not surprised by the imposition of restitution given that he had agreed to it in his plea agreement, during his providency hearing, and in his presentence interview, provided the amount would be determined "within 91 days of sentencing unless the deadline is extended for good cause." Nor was Foos surprised by the amount; he received notice of the claimed amount at sentencing. Additionally, because the prosecution filed its motion only one day after sentencing, Foos had ample time to object, allowing the court to decide the restitution amount well within its ninety-one-day deadline. He does not claim that the delay impaired his memory, the availability of evidence, or his ability to respond. *Martinez Rubier*, ¶ 49.

¶ 22 In conclusion, even if the district court erred by excusing the prosecution's noncompliance with subsection (2)(a), the error was harmless and, therefore, does not warrant vacating the restitution order.

### III. Restitution Order Reduction

¶ 23     Foos next contends that the district court's restitution award should be reduced because (1) the victim was not entitled to the replacement value of the accessories; (2) the prosecution failed to prove Foos was the proximate cause of the loss of the accessories; and (3) the victim chose not to mitigate his losses by retrieving the accessories. We disagree.

### A. Replacement Value

¶ 24     For the first time on appeal, Foos argues the victim should not have received the replacement value of the accessories but rather their fair market value. He claims the replacement value of an item may be awarded only when (1) the victim demonstrates that he must or will replace an item and (2) the prosecution proves the item is not readily replaceable at a fair market value cost.

#### 1. Standard of Review and Applicable Law

¶ 25     Generally, we review a question of law regarding the restitution statute de novo. *People v. Knapp*, 2020 COA 107, ¶ 69. But when a contention is unpreserved, we review for plain error. *People v. Ortiz*, 2016 COA 58, ¶ 13. *But see People v. Butcher*, 2018 COA 54M, ¶¶ 24-26 (holding that it is within an appellate court's

11

discretion to review an unpreserved challenge to a restitution order for plain error). An error is plain if it is both obvious and substantial. *Hagos v. People*, 2012 CO 63, ¶ 14. An error is obvious if it contravenes a clear statutory command, a well-settled legal principle, or Colorado case law. *People v. Pollard*, 2013 COA 31M, ¶ 40. An error is substantial if it so undermines the fundamental fairness of the proceeding itself as to cast serious doubt on the reliability of the judgment. *Hoggard v. People*, 2020 CO 54, ¶ 13.

¶ 26     Section 18-1.3-602(3)(a), C.R.S. 2025, defines restitution as "any pecuniary loss suffered by a victim," including but not limited to "all out-of-pocket expenses," "anticipated future expenses," and "other losses or injuries proximately caused by an offender's conduct and that can be reasonably calculated and recompensed in money." Accordingly, "the value of property for purposes of restitution is determined by the victim's 'actual, pecuniary loss' or the amount of money that will 'fulfill[] the statutory purpose of simply making the victim whole to the extent practicable.'" *People v. Stafford*, 93 P.3d 572, 575 (Colo. App. 2004) (citation omitted).

¶ 27    The prosecution bears the burden of establishing the amount of restitution that a defendant owes by a preponderance of the evidence, *id.* at 576, but "[a] trial court has broad discretion in determining the terms and conditions of a restitution order," including the amount, *People in Interest of D.W.*, 232 P.3d 182, 183 (Colo. App. 2009).  While the restitution statutes of some states, like Florida and Texas, require district courts to use fair market value, Colorado's restitution statute contains no such requirement. *Stafford*, 93 P.3d at 575.  Our statute does instruct that it be "liberally construed" to accomplish its purposes, one of which is "to provide for and collect full restitution for victims of crime in the most expeditious manner."  § 18-1.3-601(1)(g)(I), (2), C.R.S. 2025.

## 2.    Discussion

¶ 28    "Because defense counsel didn't raise this issue below, our review is for plain error." *Knapp*, ¶ 91.

¶ 29    We are unaware of any statutory or case law authority requiring the use of fair market value in calculating restitution. Relying on *Stafford,* Foos asserts that the replacement value of an item may be awarded "only" when two conditions are satisfied: (1) the victim demonstrates that he must or will replace an item,

and (2) the prosecution proves the item is not readily replaceable at a fair market value cost. 93 P.3d at 575-76. However, like the division in *Knapp*, we note that "[*Stafford*] held merely that 'the award of a reasonable replacement value is appropriate when the victim demonstrates that he or she must or will replace an item that is not readily replaceable at a fair market value cost'" — *Stafford* "didn't hold that evidence that an item is not readily replaceable at fair market value cost is always a necessary predicate to recovery of reasonable replacement value." *Knapp*, ¶ 93 (citation omitted).

¶ 30    In the absence of clear legal authority requiring fair market value, we cannot conclude that it was plain error for the court to award restitution based on replacement value.

## B.    Proximate Cause

¶ 31    Foos argues that three intervening causes break the causal connection between his crimes and the victim's injury: (1) the insurer's decision to declare the truck a "total loss"; (2) the insurer's failure to compensate the victim for the accessories; and (3) the victim's decision not to retrieve the accessories.

14

### 1. Standard of Review and Applicable Law

¶ 32     We review preserved challenges to proximate cause determinations for clear error. *Martinez v. People*, 2024 CO 6M, ¶ 32. We "must affirm the district court's findings unless they are without 'support in the record.'" *Id.* at ¶ 34 (citation omitted). We review unpreserved challenges to proximate cause determinations for plain error, *Ortiz*, ¶ 13, and "[p]lain error review is equally applicable when a party alters the grounds for his objection on appeal," *Martinez v. People*, 2015 CO 16, ¶ 14.

¶ 33     A defendant convicted of a felony offense must pay restitution for any pecuniary loss that he proximately caused his victim. *See* § 18-1.3-602(3)(a). Proximate cause is "a cause which in natural and probable sequence produced the claimed injury and without which the claimed injury would not have been sustained." *People v. Sieck*, 2014 COA 23, ¶ 6. The prosecution must prove, by a preponderance of the evidence, that the defendant proximately caused the victim's loss to support an award of restitution. *People v. Stone*, 2020 COA 24, ¶ 6.

¶ 34     However, "[u]nlawful conduct that is broken by an independent intervening cause cannot be the proximate cause of

15

injury to another." *Martinez*, 2024 CO 6M, ¶ 13 (quoting *People v. Stewart*, 55 P.3d 107, 121 (Colo. 2002)). "An intervening force is one which actively operates in producing harm to another after the actor's . . . act or omission has been committed." *Garcia v. Colo. Cab Co.*, 2023 CO 56, ¶ 23 (quoting Restatement (Second) of Torts § 441(1) (Am. L. Inst. 1965)). To qualify as an intervening cause, "an event must be unforeseeable and one in which the accused does not participate." *Martinez*, 2024 CO 6M, ¶ 13 (quoting *Stewart*, 55 P.3d at 121). "To absolve the defendant of responsibility, the intervening cause must be fully independent of, and not have been set in motion by, the original [act]." *Garcia*, ¶ 23 (quoting *Deines v. Atlas Energy Sers., LLC*, 2021 COA 24, ¶ 14). But if an event amounts to an independent intervening cause, then it "destroys the causal connection between the defendant's act and the victim's injury and, thereby becomes the cause of the victim's injury." *People v. Saavedra-Rodriguez*, 971 P.2d 223, 225-26 (Colo. 1998).

¶ 35    Therefore, to qualify as an independent intervening cause that severs proximate cause, the event must (1) actively operate in producing the harm; (2) be unforeseeable; and (3) be an event the defendant neither participated in nor set in motion.

## 2. Discussion

¶ 36    We address each of Foos's asserted intervening events in turn and conclude the district court neither clearly nor plainly erred in finding proximate cause.

¶ 37    First, Foos contends that the insurer's decision to declare the truck a total loss constitutes an intervening cause. We are perplexed by Foos's characterization of that decision as an intervening cause. As a threshold matter, an intervening event is one that "actively operates in producing harm to another." *Garcia,* ¶ 23. Although Foos tries to characterize the insurer's decision as an overreaching, precautionary measure, the insurer's assessment of the loss caused by Foos's criminal conduct did not actively *produce* the damage. The insurer merely determined the extent of the damage caused by Foos's crimes.

¶ 38    Even if we agreed that the insurer's decision produced the harm, the insurer's decision was set in motion by Foos's criminal conduct and foreseeable. Foos set in motion the insurer's decision by stealing the victim's truck across state lines with the intent to distribute controlled substances. It was reasonably foreseeable that a person whose vehicle had been stolen would file an insurance

17

claim. And we agree with the district court's finding that the insurer's assessment of the damage was reasonably foreseeable given the narcotics exposure. Because the decision did not amount to an intervening cause, the district court did not clearly err by finding proximate cause.

¶ 39     Second, Foos contends that the insurer's failure to adequately compensate the victim for the accessories is an intervening cause. This specific ground was not raised in the district court and, therefore, was not preserved.[3] Foos argues this coverage "failure" destroys proximate cause because "a reasonable person would expect an insurance settlement on a 'totaled' vehicle to include any modifications and accessories that were attached to the vehicle." Foos does not cite, and we are not aware of, any legal authority that recognizes an insurance coverage decision in a restitution case as an intervening cause. *Cf. People v. Martinez*, 2022 COA 28, ¶ 2 (allowing insurance companies that indemnify their policyholders

---

[3] Foos asserts this second ground was preserved by his overarching objection to proximate cause. We disagree and note that an issue is preserved if the district court was "presented with an adequate opportunity to make findings of fact and conclusions of law." *People v. Melendez*, 102 P.3d 315, 322 (Colo. 2004).

for losses proximately caused by felonies, misdemeanors, or other offenses to obtain restitution from offenders).  As discussed above, the insurer's coverage decision did not actively produce harm.  Also, it was reasonably foreseeable that a person whose vehicle had been stolen would file an insurance claim and that, depending on the terms of the coverage, some items on the vehicle may not be covered.  Thus, the district court did not plainly err by finding proximate cause.

¶ 40    Third, Foos contends that the victim's decision not to retrieve the accessories constitutes an intervening cause.  We are, again, unpersuaded.  As with the previous two grounds, the victim's decision did not actively produce the harm.  He simply declined to retrieve parts of his vehicle after it was stolen, impounded in another state, and declared a total loss due to potential drug contamination.  Nor was the victim's decision unforeseeable, considering that he transferred title to his insurer and, as the district court noted, it would have been "costly and time-consuming" to "travel over 500 miles to Colorado to remove the hitch and bumper."  And finally, the victim's decision not to retrieve the accessories cannot be considered as entirely independent of

19

Foos's criminal conduct or unrelated to actions set in motion by him. *Garcia*, ¶ 23. For all these reasons, the district court did not clearly err by finding proximate cause.

### C. Duty to Mitigate

¶ 41 Lastly, Foos argues that, even if we were to conclude that his conduct is the proximate cause of the damages, we should recognize a victim's duty to mitigate damages and, consequently, reduce the amount of restitution ordered.

¶ 42 Whether an injured party has a duty to mitigate damages is a legal question that we review de novo. *Tremitek, LLC v. Resilience Code, LLC*, 2023 COA 54, ¶ 23. There is no Colorado legal authority imposing an affirmative duty on a crime victim seeking restitution to mitigate any of their claimed losses. But even assuming the duty to mitigate applies to crime victims in restitution cases, the victim in this case did not fail to mitigate. The victim testified that the recovery would take three days because he would have to travel over 500 miles with a companion to attempt to remove the accessories from a truck to which he no longer held ownership rights. We agree with the district court that these costs "could

conceivably equal the costs of the hitch and bumper," and we decline to reduce the amount of restitution ordered.

## IV. Disposition

¶ 43    The restitution order is affirmed.

JUDGE FREYRE and JUDGE PAWAR concur.