**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Hilary LASSEK, Defendant–Appellant.**

No. 02CA2142.

Colorado Court of Appeals,
Div. IV.

April 21, 2005.

Rehearing Denied Sept. 8, 2005.

John W. Suthers, Attorney General, Elizabeth Rohrbough, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Anne Stockham, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

WEBB, J.

Defendant, Hilary Lassek, appeals the sentence imposed and restitution order entered

following his guilty plea to leaving the scene of an accident involving death, § 42-4-1601(1), C.R.S.2004; leaving the scene of an accident involving serious bodily injury, § 42-4-1601(1); tampering with physical evidence, § 18-8-610(1)(a), C.R.S.2004; and two counts of careless driving, § 42-4-1402(1), C.R.S.2004. We affirm.

The charges arose from an accident in which the car defendant was driving struck two Air Force Academy cadets, killing one and injuring the other.

The plea agreement provided for a sentencing cap of twelve years in the Department of Corrections. The trial court sentenced defendant to consecutive terms of six years imprisonment for leaving the scene of an accident resulting in death and three years imprisonment for leaving the scene of an accident resulting in serious bodily injury, plus concurrent terms for the other offenses. The court also ordered defendant to pay $10,784.80 in restitution.

## I.

■ Defendant contends that when imposing sentence, the trial court improperly relied on evidence regarding the background and character of the deceased victim, consisting primarily of his accomplishments at the Air Force Academy. We disagree.

Section 18-1-409(1), C.R.S.2004, permits appellate review of "the propriety of the sentence," except when the sentence imposed is "within a range agreed upon by the parties pursuant to a plea agreement."

Several divisions of this court have treated the plea agreement proviso as a complete bar to appellate review where the sentence does not exceed the agreed cap. *See People v. Scofield*, 74 P.3d 385 (Colo.App.2002); *People v. Garcia*, 55 P.3d 243 (Colo.App.2002)(defendant's claim that court emphasized punishment and refused to consider community corrections barred because his sentence did not exceed the agreed cap); *People v. Prophet*, 42 P.3d 61 (Colo.App.2001)(defendant's claim that trial court abused its discretion by sentencing him to the maximum term under his plea agreement barred).

However, in *People v. Misenhelter*, 121 P.3d 230, 2004 WL 3246112 (Colo.App. No. 02CA2090, Dec. 30, 2004), the division held that § 18-1-409(1) does not bar appeals contesting "the propriety of the sentencing proceeding." The *Misenhelter* division quoted extensively from *People v. Malacara*, 199 Colo. 243, 247 n. 4, 606 P.2d 1300, 1303 (1980), including the statement that a limitation on appellate review of sentencing proceedings which implicated due process "would likely be unconstitutional." *Misenhelter, supra*, 121 P.3d at 233. The division also referred to a statement in the legislative history of the plea agreement proviso that "the proviso's limitation did not go beyond precluding an appeal to review the propriety of the sentence." *Misenhelter, supra*, 121 P.3d at 233.

The division then vacated the defendant's aggravated range sentence, which had not exceeded the cap in his plea agreement, as a violation of his Sixth Amendment rights. The division concluded that, under *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the sentence "could not have been imposed by the court without a jury determination of the existence of aggravating circumstances." *Misenhelter, supra*, 121 P.3d at 234.

Here, in contrast, defendant was sentenced below the sentencing cap in his plea agreement and within the presumptive range for each conviction. *See* § 18-1.3-401(1)(a)(V)(A), C.R.S.2004. Although the proviso cannot preclude review of a constitutional flaw in a sentencing proceeding, *People v. Malacara, supra*, we perceive no constitutional violation here.

Defendant first asserts a violation of his Sixth Amendment confrontation right because the court considered letters about the deceased victim. We disagree.

■ Defendant cites no Colorado or United States Supreme Court authority, and we have found none, recognizing the constitutional right of confrontation in sentencing proceedings.

The federal circuit courts do not apply the Confrontation Clause to noncapital sentencing proceedings. *See United States v.*

*Beaulieu,* 893 F.2d 1177, 1180 (10th Cir.1990)(constitutional requirements mandated in a criminal trial as to confrontation and cross-examination do not apply at noncapital sentencing proceedings); *see also United States v. Francis,* 39 F.3d 803 (7th Cir.1994); *United States v. Petty,* 982 F.2d 1365, *amended,* 992 F.2d 1015 (9th Cir.1993); *United States v. Silverman,* 976 F.2d 1502 (6th Cir.1992); *United States v. Tardiff,* 969 F.2d 1283 (1st Cir.1992); *United States v. Wise,* 976 F.2d 393 (8th Cir.1992); *United States v. Johnson,* 935 F.2d 47 (4th Cir. 1991); *United States v. Kikumura,* 918 F.2d 1084 (3d Cir.1990); *United States v. Carmona,* 873 F.2d 569 (2d Cir.1989); *United States v. Giltner,* 889 F.2d 1004 (11th Cir. 1989).

We find these cases persuasive and therefore conclude that the sentencing proceedings did not violate defendant's Confrontation Clause rights.

■ Defendant next asserts that consideration of the victim character evidence rendered the proceedings fundamentally unfair, in violation of his due process rights under U.S. Const. amend. XIV and Colo. Const. art. II, § 25. We are not persuaded.

Defendant does not dispute the accuracy of the information concerning the deceased victim's character. *Cf. United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972)(disapproving of reliance on assumptions about other convictions that turn out to be materially untrue). Nor does he dispute having been given adequate notice of and an opportunity to explain or rebut this information. *See United States v. Pelliere,* 57 F.3d 936 (10th Cir.1995)(due process requires that a defendant be given adequate notice of and an opportunity to rebut or explain information used against him in sentencing).

Defendant does not cite, nor have we found, either Colorado or United States Supreme Court authority treating receipt of victim character evidence in a sentencing proceeding as a due process violation.

Defendant's reliance on *People v. Frye,* 18 Cal.4th 894, 77 Cal.Rptr.2d 25, 959 P.2d 183 (1998), to support his due process argument is misplaced. There, the court rejected the defendant's due process argument. It discussed victim impact evidence in the context of the guilt phase, not at sentencing.

Moreover, defendant's characterization of the sentencing proceeding as fundamentally unfair is belied by the fact that the trial court allowed each side approximately two hours and heard fourteen witnesses on behalf of defendant.

Therefore, we discern no constitutional infirmity in consideration of the victim character evidence at sentencing.

■ Defendant raises three statutory challenges to the sentencing proceeding: (1) the trial court heard from persons who are not defined as victims under § 24–4.1–302(5), C.R.S.2004; (2) § 16–11–102(1.5), C.R.S.2004, does not provide for inclusion of victim character evidence in the victim impact statement portion of the presentence investigation report; and (3) victim character evidence is not listed as a factor relevant to sentencing in § 18–1.3–401(1)(b)(I). However, because defendant's sentence did not exceed the cap in his plea bargain, we interpret the plea agreement proviso as precluding review of these nonconstitutional challenges. *See People v. Scofield, supra; People v. Garcia, supra.* Although *People v. Misenhelter, supra,* could be read to the contrary, we note that it dealt only with a constitutional infirmity in the sentencing proceeding.

In construing a statute, our primary task is to determine and give effect to the intent of the General Assembly. *People v. Terry,* 791 P.2d 374 (Colo.1990). To ascertain that intent, we first look to the statutory language and give the statutory terms their plain and ordinary meaning. *Bertrand v. Bd. of County Comm'rs,* 872 P.2d 223 (Colo.1994).

If the statutory language is clear and unambiguous, we interpret the statute as written because the General Assembly is presumed to have meant what it plainly said. *McCall v. Meyers,* 94 P.3d 1271 (Colo.App. 2004). We also construe the various statutory provisions as a whole, giving consistent, harmonious, and sensible effect to each part whenever possible. *People v. Banks,* 9 P.3d 1125 (Colo.2000).

When the supreme court decided *People v. Malacara, supra,* § 18–1–409(1) provided, in pertinent part:

> [T]he person convicted shall have the right to one appellate review of *the propriety of the sentence, having regard to the nature of the offense, the character of the offender, and the public interest, and the manner in which the sentence was imposed, including the sufficiency and accuracy of the information on which it was based.*

Colo. Sess. Laws 1991, ch. 4 at 14 (2d Extraordinary Sess.)(emphasis added). The emphasized language also appears in ABA Standards for Criminal Justice § 20–3.2.

In *Malacara,* the supreme court recognized that review of a sentence can include "two fundamental and distinct issues," first, the intrinsic "appropriateness of the sentence itself," and second, "the extrinsic factors and procedures which affect the determination of the sentence." *Malacara, supra,* 199 Colo. at 247, 606 P.2d at 1302–03. However, *Malacara* dealt with alleged harshness of the sentence, not a flaw in the sentencing procedure.

The cases cited by the *Malacara* court concerning extrinsic factors and procedures all involve constitutional issues. *See Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)(voluntariness of plea called into question when sentencing recommendation contrary to plea agreement); *Mempa v. Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967)(indigent defendant not provided counsel at sentencing proceeding); *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948)(sentencing court relied on false information).

Hence, we do not interpret the statement in *Malacara,* 199 Colo. at 247, 606 P.2d at 1303, that the General Assembly did not intend to bar review of "those factors beyond the intrinsic fairness of the sentence, which may have affected the determination of the sentence imposed," as mandating review of nonconstitutional procedural errors.

Further, the commentary on sentencing proceedings in ABA Standards on Criminal Justice § 20–3.2 discusses review of "the sentencing judge's conclusions of both law and fact." Reliance on inaccurate information in sentencing raises a constitutional issue. *United States v. Tucker, supra.*

In any event, we conclude the plea agreement proviso to § 18–1–409(1), adopted nineteen years after the *Malacara* decision, precludes nonconstitutional challenges to a sentencing proceeding by a defendant whose sentence did not exceed the agreed cap.

Unlike the division in *Misenhelter,* we do not consider the phrase "the propriety of the sentence," rather than "the propriety of the sentencing proceeding," to be a limitation on the scope of the proviso. "[T]he propriety of the sentencing proceeding" phrase has never appeared in the statute. In *Malacara,* 199 Colo. at 247, 606 P.2d at 1303, that phrase was used as a parenthetical summary of the statutory language beginning with, "the manner in which the sentence was imposed."

The grammatical structure of the statute creates a single right to review of "the propriety of the sentence," not a separate right to review of the sentencing proceedings. Had the General Assembly intended to create such a separate right, the statute would have said, "one appellate review of the propriety of the sentence ... and *of* the manner in which the sentence was imposed" (emphasis added). *See* § 2–4–101, C.R.S.2004 ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage.").

The statute then informs the appellate court that the enumerated factors, including "the manner in which the sentence was imposed," may affect "the propriety of the sentence." Thus, for defendants whose sentences did not exceed the agreed cap, the proviso's prohibition against "appellate review of the propriety of the sentence" bars review of all statutory factors that may have affected propriety, including "the manner in which the sentence was imposed."

Because we consider this language clear, we may not look at extrinsic evidence of legislative intent, such as the legislative history quoted in *Misenhelter. See People v. J.J.H.,* 17 P.3d 159 (Colo.2001); *see also State v. Nieto,* 993 P.2d 493, 500 (Colo. 2000)("If courts can give effect to the ordi-

nary meaning of words used by the legislature, the statute should be construed as written, giving full effect to the words chosen, as it is presumed that the General Assembly meant what it clearly said.").

In summary, we decline to follow *People v. Misenhelter, supra,* beyond considering constitutional flaws in sentencing proceedings where, as here, the sentence imposed does not exceed the agreed cap.

Accordingly, we discern no reversible error in the sentencing proceeding.

## II.

Defendant next contends the trial court erred in the amount of restitution it ordered him to pay. We disagree.

Every felony or misdemeanor order of conviction must include consideration of restitution. Section 18-1.3-603(1), C.R.S.2004; *People v. Smith,* 121 P.3d 243, 2005 WL 427673 (Colo.App. No. 02CA1515, Feb. 24, 2005).

Section 18-1.3-602(3)(a), C.R.S.2004, defines restitution as:

> any pecuniary loss suffered by a victim, and includes but is not limited to all out-of-pocket expenses, interest, loss of use of money, anticipated future expenses, rewards paid by victims, money advanced by law enforcement agencies, adjustment expenses, and other losses or injuries proximately caused by an offender's conduct and that can be reasonably calculated and recompensed in money.

The General Assembly declared restitution in criminal cases to be "a mechanism for the rehabilitation of offenders," "a deterrent to future criminality," and a means "to lessen the financial burdens inflicted upon [victims and their immediate families], to compensate them for their suffering and hardship, and to preserve the individual dignity of victims." Section 18-1.3-601(1)(c)–(e), C.R.S.2004. The restitution statute is to be liberally construed to accomplish these goals. Section 18-1.3-601(2), C.R.S.2004.

"Any amount paid to a victim under an order of restitution shall be set off against any amount later recovered as compensatory damages by such victim in any federal or state civil proceeding." Section 18-1.3-603(6), C.R.S.2004. Restitution may also be decreased "[i]f the defendant has otherwise compensated the victim or victims for the pecuniary losses suffered." Section 18-1.3-603(3)(b)(II), C.R.S.2004; *see People v. In Interest of T.R.,* 860 P.2d 559 (Colo.App.1993)(holding statutory setoff also applicable to settlement made before restitution order).

The People bear the burden of proving by a preponderance of the evidence the amount of restitution owed. *People v. Stafford,* 93 P.3d 572 (Colo.App.2004). However, no Colorado appellate opinion has resolved whether the People or the defendant bears the burden of proving a setoff to a restitution order.

The trial court has broad discretion in determining the appropriate terms and conditions of a restitution order. Absent a gross abuse of discretion, the court's ruling will not be disturbed on appeal. *People v. Trujillo,* 75 P.3d 1133 (Colo.App.2003).

Here, the restitution order included payment of $6,951.80 to the deceased victim's parents for burial expenses and their travel costs to attend a memorial service at the Air Force Academy and court appearances.

## A.

We first reject defendant's argument that the trial court erred in failing to reduce his restitution obligation to the victim's parents by the $50,000 that his automobile insurer had previously paid to them.

A victim's civil judgment against a defendant does not preclude a restitution order for the same damages in a criminal case. However, the defendant is entitled to a setoff against the restitution order to the extent of any money actually paid to the victim for the same damages covered by the order. *People v. Wright,* 18 P.3d 816 (Colo. App.2000).

Where a civil claim precedes the restitution proceeding, the court must first determine the total amount of the victim's pecuniary damages subject to restitution and then

subtract "any proceeds attributable to those damages received by the victim" from the civil claim. *People v. Acosta,* 860 P.2d 1376, 1382 (Colo.App.1993).

Here, before the court ordered restitution, defendant's insurance company settled with the parents. The only document memorializing the settlement, a "Covenant Not to Execute" signed by the parents, did not identify any particular losses covered by the payment.

The trial court recognized its duty to make specific findings apportioning the settlement to any actual damages subject to restitution, except those for which the parents had been compensated. However, the court concluded it could not make a setoff because it was unable to determine "what amount of the $50,000 recovered by [the parents] went to compensate for burial expenses or for travel out here or for lodging out here."

Defendant argues that "the prosecution failed to meet its burden to establish the amount of restitution owing after the payment by [his] insurance provider." The People respond that the payment was unapportioned and defendant failed to prove that the payment included expenses covered by the restitution order. We agree with the People.

In *People v. In Interest of T.R., supra,* a division of this court held that in considering restitution, a trial court could not allocate proceeds from an unapportioned settlement agreement without specific evidence that the settlement included particular categories of loss. On remand, the trial court was instructed to make specific findings regarding apportionment and set off such amounts against the restitution order. However, the division did not address which party bears the burden of proving a setoff.

In civil proceedings, the party asserting a setoff bears the burden of proof. *See, e.g., Indep. Trust Corp. v. Stan Miller, Inc.,* 796 P.2d 483 (Colo.1990)(claimant has burden of proof to apportion mechanics' lien); *Farmers Ins. Exch. v. Taylor,* 45 P.3d 759 (Colo.App.2001)(insurer has burden of production and proof of policy limits and any setoffs); *Safeway, Inc. v. Indus. Claim Appeals Office,* 968 P.2d 162 (Colo.App.1998)(party asserting a setoff has the burden of proof because a setoff is an affirmative defense to a workers' compensation claim); *cf. Fried v. Leong,* 946 P.2d 487 (Colo.App.1997)(defendant has the burden of proof in apportioning damages to victim's preexisting condition and is responsible for all damages if jury cannot make apportionment). We discern no reason to depart from this rule where a defendant asserts a setoff in a restitution proceeding.

If a debtor owes more than one debt to a creditor and does not direct how a payment is to be applied, generally the creditor may apply the payment in any way that the creditor desires. *Weston Group, Inc. v. A.B. Hirschfeld Press, Inc.,* 845 P.2d 1162 (Colo. 1993).

In a civil action for damages arising from the death of a child, parents may recover both pecuniary losses, such as the expenses covered by the restitution order at issue, and noneconomic damages, such as pain and suffering. Section 13–21–203, C.R.S.2004; *B.G.'s, Inc. v. Gross,* 23 P.3d 691 (Colo.2001).

Here, defendant presented no evidence, such as the history of negotiations between the insurer and the parents, as a basis for allocating the unapportioned settlement to pecuniary losses covered by the restitution order. Absent apportionment by defendant's insurer, the parents could allocate the entire settlement to noneconomic damages.

Accordingly, we conclude the trial court did not err in refusing to set off the insurance settlement against defendant's restitution obligation to the parents.

### B.

We also reject defendant's argument that the trial court erred in imposing restitution for losses not proximately caused by his conduct.

"Proximate cause" means a cause that in "natural and probable sequence produced the claimed injury" and "without which the claimed injury would not have been sustained." *People v. Stewart,* 55 P.3d 107, 116 (Colo.2002); *see People v. Lopez,* 97 P.3d 277 (Colo.App.2004)(in criminal law, the concept

of proximate cause is that persons should be responsible for the natural and probable consequences of their acts).

 When a victim seeks restitution for a loss that is attenuated from the defendant's conduct, the trial court must carefully consider whether proximate cause exists. *People v. Trujillo, supra* (rejecting victim's request for restitution to cover costs of an alarm system because his general feelings of insecurity could have multiple causes).

Here, defendant challenges $888.86 awarded to the parents for attending the memorial service at which the victim was honored along with other cadets and graduates who had died that year, asserting that their attendance was not a foreseeable consequence of his conduct. We are not persuaded.

The trial court found:

The Court understands the defense argument about the separate funeral ceremony here at the Air Force Academy being a decision made by the victim's family to attend that, but whether it's a decision made by them is of little or no moment. It is something caused directly by the defendant, that is, his behavior which led to the death of [the victim], then led to his parents making a decision to attend that ceremony in Colorado. And the Court will not strike those requests, other than the per diem.

Defendant's assertion that restitution for this expense is improper because § 18–1.3–603(1) does not list a memorial service is inaccurate. The statute states that restitution "is not limited to" the enumerated losses. Section 18–1.3–602(3)(a).

The parents' attendance at a memorial service was a natural and probable consequence that would not have occurred without defendant's actions. Hence, defendant's conduct was the proximate cause of their attendance. *See People v. Clay*, 74 P.3d 473 (Colo.App.2003)(defendant's stealing car was proximate cause of towing company's inability to collect storage charges arising from lack of storage space for stolen vehicle at police impoundment lot and failure of victim

to retrieve vehicle from towing company's lot for extended period).

Accordingly, we conclude the trial court did not abuse its discretion in ordering restitution for the memorial service.

Defendant's sentence and the restitution order are affirmed.

Judge GRAHAM and Judge NEY concur.