The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
Date February 13, 2020

## 2020COA24

**No. 16CA1348, *Peo v. Stone*— Criminal Law — Sentencing — Restitution — Colorado Crime Victim Compensation Act; Labor and Industry — Workers' Compensation — Benefits — Permanent Partial Disability**

When a court is deciding whether to order a defendant to pay restitution to a crime victim compensation board, which definition of victim applies: section 18-1.3-602(4)(a), C.R.S. 2019, the one in the general restitution statute; or section 24-4.1-102(10), C.R.S. 2019, the one in the crime victim compensation board statute?  A division of the court appeals decides that the latter statute controls.

When a court is deciding whether to order a defendant to pay restitution to a workers' compensation insurer, are the insurer's payments for permanent partial disability compensation for lost future earnings, which the restitution statute does not allow?  A division of the court of appeals answers this question "no."

COLORADO COURT OF APPEALS                              **2020COA24**

Court of Appeals No. 16CA1348
Douglas County District Court No. 14CR154
Honorable Paul A. King, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Ryan Cole Stone,

Defendant-Appellant.

ORDER AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by CHIEF JUDGE BERNARD
Taubman and Navarro, JJ., concur

Announced February 13, 2020

Philip J. Weiser, Attorney General, Jacob R. Lofgren, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jud Lohnes, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Ryan Cole Stone, appeals the trial court's restitution order.  We affirm in part, and we reverse in part.

I.    Background

¶ 2    Defendant stole a car, and he led the police on a high-speed chase around the metro Denver area.  In the process, he commandeered several other cars.  Colorado State Patrol troopers tried to stop defendant using "stop sticks" — sticks with spikes on them designed to puncture a car's tires to disable it — on E-470, but he avoided the stop sticks by swerving around them onto the road's shoulder.  In doing so, he hit one of the troopers with the car, causing the trooper serious injuries.

¶ 3    A jury convicted defendant of attempted manslaughter, first degree assault, vehicular eluding, criminal mischief, six counts of leaving the scene of an accident, two counts of robbery, two counts of child abuse, and three counts of aggravated motor vehicle theft. We affirm these convictions in a separate appeal. *People v. Stone*, 2020COA23.

¶ 4    Defendant objected to the prosecution's written restitution request, and he asked for a hearing.  Following the hearing, the trial court granted most of the prosecution's request.  The court asked

1

the prosecution to submit a proposed written restitution order for its approval that reflected the amounts that it had orally ordered. The prosecution submitted, and the trial court signed, a written restitution order in the amount of $252,027.69.

## II.    Standard of Review and Legal Principles

¶ 5    Section 18-1.3-603, C.R.S. 2019, requires convicted offenders to pay restitution to compensate crime victims for the harm that they have suffered.  "The purpose of restitution is to make the victim whole, and the Restitution Act is to be 'liberally construed' to accomplish that purpose."  *People v. McCann*, 122 P.3d 1085, 1087 (Colo. App. 2005)(quoting § 18-1.3-601(2), C.R.S. 2004).  A trial court must order restitution whenever a defendant's criminal conduct causes pecuniary damage to a victim.  *People v. Reyes*, 166 P.3d 301, 302 (Colo. App. 2007).

¶ 6    The prosecution has the burden of proving restitution by a preponderance of the evidence.  *People in Interest of D.W.*, 232 P.3d 182, 183 (Colo. App. 2009).  Specifically, it must establish "the amount of restitution owed and, generally, that the defendant's conduct was the proximate cause of the victim's loss."  *People v. Henry*, 2018 COA 48M, ¶ 15.

¶ 7    Generally, we review a court's restitution order for an abuse of discretion. *Id.* at ¶ 12. But, when the issue is whether there was sufficient evidence to justify the order, we apply de novo review, evaluating "whether the evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, establishes by a preponderance of the evidence that the defendant caused that amount of loss." *People v. Barbre*, 2018 COA 123, ¶ 25; *see also People in Interest of A.V.*, 2018 COA 138M, ¶ 32.

¶ 8    This appeal also requires us to interpret statutes. Our review is de novo. *People v. Jenkins*, 2013 COA 76, ¶ 12.

¶ 9    When we interpret a statute, we must ascertain and give effect to the legislature's intent. *Colo. Dep't of Revenue v. Creager Mercantile Co.*, 2017 CO 41M, ¶ 16. "We construe the entire statutory scheme to give consistent, harmonious, and sensible effect to all [of its] parts," and "[w]e give effect to words and phrases according to their plain and ordinary meaning[s]." *Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1089 (Colo. 2011). If a statute's language is clear, we apply it as written. *Id.*

### III. Restitution to the Crime Victim Compensation Board

¶ 10    Defendant contends that the trial court erroneously ordered restitution to the Crime Victim Compensation Board, which we shall call "the board."

¶ 11    In Colorado, each judicial district has its own "crime victim compensation board." § 24-4.1-103(1), C.R.S. 2019. To be eligible for compensation, a person must apply to the board. § 24-4.1-105(1).

¶ 12    The board made two payments that are pertinent to this appeal. First, the board paid a claim to the trooper's brother for his travel expenses to come to Colorado. Second, the board paid a claim to the trooper's girlfriend for her lost wages.

¶ 13    Defendant asserts that the trial court erred by awarding restitution to the board for the payments to the brother and to the girlfriend for two reasons: (1) they were not "victims" under the restitution statute; and, (2) even if they were, the prosecution did not prove that defendant's conduct proximately caused their losses. We disagree with both contentions for the following reasons.

## A. Victim

¶ 14    Defendant first contends that the trial court could not order restitution to the board because neither the brother nor the girlfriend met the definition of a victim in the restitution statute. We are not persuaded.

¶ 15    Under the restitution statute, a "victim" is "any person aggrieved by the conduct of an offender." § 18-1.3-602(4)(a), C.R.S. 2019. As is pertinent to this appeal, the restitution statute allows compensation to a "sibling" or a "significant other," as that term is defined in section 24-4.1-302(4), C.R.S. 2019, of a victim, if the victim is "deceased or incapacitated." § 18-1.3-602(4)(a)(V). Defendant asserts that, because the trooper was not "deceased or incapacitated," the definitions of "sibling" and "significant other" are inapplicable to the brother and girlfriend.

¶ 16    But the restitution statute also provides that "victim" means "[a]ny victim compensation board that has paid a victim compensation claim." § 18-1.3-602(4)(a)(IV). In this case, the board paid for the brother's travel expenses and the girlfriend's lost wages. So, under that statute, the board was the victim. *See id.*; *see also*

*People v. Bohn*, 2015 COA 178, ¶¶ 10-11, *superseded by statute as stated in Henry*, 2018 COA 48M.

¶ 17     There are three reasons why we are not persuaded that the person whom the board reimburses must also meet one of the definitions in section 18-1.3-602(4)(a) for the trial court to award restitution to the board.

¶ 18     First, the plain language of section 18-1.3-602(4)(a) does not go that far. It begins by stating that the word "'[v]ictim' means *any* person aggrieved by the conduct of an offender and includes *but is not limited to* the following . . . ." *Id.* (emphasis added).

¶ 19     Second, when looking at the statutes that govern crime victim compensation boards, we see that a victim includes "any person who is a relative of a primary victim." § 24-4.1-102(10)(a)(III), C.R.S. 2019. A "primary victim" is "[a]ny person against whom a compensable crime is perpetrated or attempted." § 24-4.1-102(10)(a)(I). A "[r]elative" includes a "brother" or "any person who has a family-type relationship with a victim." § 24-4.1-102(9).

¶ 20     When reading these statutes together, our first obligation is to harmonize the definitions of "victim" in section 18-1.3-602(4)(a) and in section 24-4.1-102(9) and (10). § 2-4-205, C.R.S. 2019. We can

do so by concluding that (1) the specific definition of "victim" in section 24-4.1-102(9) applies to crime victim compensation board decisions and to trial court decisions awarding restitution to such boards; while (2) the definition of "victim" found in section 18-1.3-602(4)(a) applies to all other trial court decisions to award compensation.

¶ 21    But, third, even if we were to conclude that these two statutes conflict, we would reach the same result because "[a] primary rule of statutory construction is that a specific statute prevails over general legislation." *People v. Weller*, 679 P.2d 1077, 1082 (Colo. 1984); *see also* § 2-4-205, C.R.S. 2019.  And the definition of "victim" in section 24-4.1-102(9) is more specific than the definition in section 18-1.3-602(4)(a) because it deals with only one part of the universe of restitution cases: awards made by crime victim compensation boards.  So defendant's assertion — the board could not compensate the brother or the girlfriend because they were not victims for the purposes of the general restitution statute under section 18-1.3-602(4)(a) — is rebuffed by the express language of the statute that governed the board's decisions in this case.

## B.    Proximate Cause

¶ 22    The prosecution must prove, by a preponderance of the evidence, that the defendant proximately caused the victim's loss. *People v. Henson*, 2013 COA 36, ¶ 11.  This legal principle brings us to defendant's second contention.

¶ 23    In 2015, the General Assembly amended the restitution statute to address cases in which a compensation board seeks reimbursement for assistance provided to a victim.  *See Henry*, ¶ 16.  "A crime victim may seek compensation from a compensation board [and,] [i]f the board pays such a claim, a court may order the defendant to reimburse the board for the amount of assistance that it paid to the victim."  *Id.* (citation omitted).

¶ 24    Under this statute, "the amount of assistance provided and requested by the crime victim compensation board is presumed to be a direct result of the defendant's criminal conduct and must be considered by the court in determining the amount of restitution ordered."  § 18-1.3-603(10)(a).  This statute creates a rebuttable presumption that the prosecution has satisfied its burden of proving "that the defendant's conduct was the proximate cause of the victim's loss."  *Henry*, ¶ 18.  So, "[o]nce a compensation board

has established that it paid a victim a set amount, the defendant has the burden of introducing evidence to show that the amount paid was not the direct result of his criminal conduct."  *Id.* at ¶ 19.

¶ 25 Although the division decided *Henry* before the prosecution filed its answer brief and defendant filed his reply brief, neither party mentions it.  We will nonetheless assume, without deciding, that the amended statute does not apply in the present case because defendant committed the underlying crimes before the legislature amended the statute.  *See* Ch. 60, sec. 6, § 18-1.3-603, 2015 Colo. Sess. Laws 147; *see also People v. Stellabotte*, 2018 CO 66, ¶ 33 (noting that a statute that is silent on whether it applies prospectively or retroactively is presumed to apply prospectively unless an exception applies).

¶ 26 We therefore apply *Bohn*, ¶ 19, which provided that "where a [victim compensation board] has paid a victim compensation claim, the prosecution still must show by a preponderance of the evidence that . . . the underlying loss was proximately caused by the defendant."  For our purposes, "[p]roximate cause . . . is defined as a cause which in natural and probable sequence produced the claimed injury and without which the claimed injury would not

have been sustained." *People v. Rivera*, 250 P.3d 1272, 1274 (Colo. App. 2010). When the underlying loss is attenuated from the crime, "the trial court must carefully consider whether proximate cause exists." *Id.*

¶ 27     In other words, the prosecution in this case needed to show that defendant's conduct "proximately caused" (1) the brother's travel expenses; and (2) the girlfriend's lost wages. We conclude, for the following reasons, that the prosecution provided sufficient evidence to prove that defendant caused the brother's travel expenses and the girlfriend's lost wages.

### 1.     The Brother's Travel Expenses

¶ 28     The trooper said that his mother and his brother came to Colorado to visit him before his fifth surgery. He told the court that "they were there to support [him] and be there physically for [him]." He added that they would not have visited him but for his surgery. He said that his mother and his brother rented a car to transport him "to and from the medical facility and home." The board's director testified that the board reimbursed the mother and the brother for their travel expenses.

10

¶ 29    Defense counsel declined to question either the trooper or the board's director.

¶ 30    The trial court found that the mother and the brother came to Colorado to "help [the trooper] in [his] recovery." But the court also noted that it had not heard any evidence "related to what the mother or the brother did for [the trooper] with respect to the surgery." The trial court then raised a concern: "they were both here at the same time providing . . . the same type of service."

¶ 31    So the court decided that it would only award the restitution request for the board's payments to one of the two; it chose, at random, the brother. Relying on *People v. Lassek,* 122 P.3d 1029 (Colo. 2005), the court decided that "there's enough of a connection made . . . that the relative would not have had to come out here to provide assistance to [the trooper] but for the fact that [he had] suffered injury at the hands of the defendant."

¶ 32    In *Lassek,* the division affirmed a trial court's restitution award that included the victim's parent's travel to a "memorial service at which the victim was honored along with other[s] . . . who had died that year" because "[t]he parents' attendance at a memorial service was a natural and probable consequence that

11

would not have occurred without defendant's actions." *Id.* at 1036. But defendant submits that the trial court misapplied *Lassek* because the victim's parents in that case were clearly "victims" under the restitution statute. But the issue in *Lassek* was not whether the parents were victims under the statute. The issue was, instead, whether attending a memorial service could be properly attributed to the defendant's conduct. At any rate, defendant's submission is foreclosed by our conclusion in Part III.A that the brother and the girlfriend were victims for the purposes of section 18-1.3-602(4)(a)(IV).

¶ 33 Defendant also asserts that, "because the court could not find that [the trooper] needed help and that his brother and mother provided it, [the court] had no basis to order restitution to either of them." We disagree because defendant misconstrues the trial court's findings. The court determined that the prosecution had proved that the underlying losses — mother's and brother's travel expenses — were proximately caused by defendant's conduct. In other words, the mother's and the brother's travel expenses were "a natural and probable consequence that would not have occurred without defendant's actions." *Lassek*, 122 P.3d at 1036. The only

12

reason the court did not award restitution to them both is because it could not determine whether the trooper needed them both to be there.

¶ 34    We therefore conclude that the prosecution presented sufficient evidence to show by a preponderance of the evidence that defendant proximately caused the brother's travel expenses. *See City of Littleton v. Indus. Claim Appeals* Office, 2016 CO 25, ¶ 38 (noting that the preponderance-of-the-evidence standard does not require a particularly high degree of proof).

## 2.    The Girlfriend's Lost Wages

¶ 35    The trooper described also described the girlfriend as his "partner," and, according to documents in the record, she lived with him.  He told the court that she worked full time as the director of a preschool, but that she had to take time off to help him recover from his injuries.  He said that she would not have taken time off work but for his injuries.  She took time off during the initial two weeks that he was in the hospital, and then again after he got out of the hospital, so that she could transport him to other medical facilities.  The prosecution also submitted pay stubs showing the amount of time that the girlfriend missed work at the preschool.

13

¶ 36    The trial court concluded that the prosecution had presented

sufficient evidence to prove that the girlfriend had "provided a

service to [the trooper] immediately after the injury occurred and

that she then suffered a loss in wages as a result of that."

¶ 37    Defendant contends that the prosecution did not establish

that his conduct had proximately caused the girlfriend's lost wages

because the trooper's testimony "did not differentiate between the

time [the girlfriend] spent providing moral versus physical support."

Defendant believes this distinction is important because "moral

support" does not "necessarily occur during working hours."

¶ 38    We are not persuaded because defendant does not submit that

the girlfriend's lost wages were not proximately caused by his

conduct.  He simply asserts that some of the support that the

girlfriend gave defendant may have occurred during nonworking

hours.  This assertion is irrelevant.  The prosecution showed that

the girlfriend took time off work to help the trooper, which "was a

natural and probable consequence that would not have occurred

without defendant's actions."  *Lassek*, 122 P.3d at 1036.  We

therefore conclude, that the prosecution presented sufficient

evidence to show by a preponderance of the evidence that defendant

14

proximately caused the girlfriend's lost wages. *See City of Littleton*, ¶ 38.

## IV. Restitution to the Workers' Compensation Administrator

¶ 39    Defendant contends that the trial court erroneously ordered restitution for the trooper's "permanent partial disability." He adds that permanent partial disability benefits constitute a "loss of future earnings," which are not compensable under the restitution statute. (We note that this challenge only concerns about $26,000 of the amount that the court ordered him to pay to the administrator; defendant does not contest the rest of it, which totals more than $200,000.)

### A. Additional Background

¶ 40    The state of Colorado insures itself for workers' compensation claims, which means that the state has set aside funds to provide benefits for its workers who experience on-the-job injuries. It has contracted with a third-party administrator called Broadspire, which we shall call "the administrator," to manage these claims. So state employees' workers' compensation benefits are paid by the administrator. When a state employee is injured, the administrator assigns a claims adjuster to investigate the injury and to determine

15

whether the claim is compensable under the workers' compensation statute.

¶ 41    There are three types of benefits under the workers' compensation statute: medical, disability, and death.  *See generally* §§ 8-42-101 to -125, C.R.S. 2019.  The claims adjuster in this case determined that the trooper was entitled to both medical and disability benefits, but, for the purposes of this appeal, we are only concerned with the disability benefits.

¶ 42    There are two general types of disability benefits: temporary and permanent.  *See City of Thornton v. Replogle*, 888 P.2d 782, 784 (Colo. 1995).  When the prosecution filed its request for restitution in January 2016, the accompanying documents only included payments made by the administrator for temporary disability benefits.  The prosecution amended its request in April 2016, but it did not modify the restitution requested for the administrator.

¶ 43    In June 2016, the trial court held the restitution hearing.  On the morning of the hearing, the prosecutor notified the court that the trooper "was provided updated ongoing benefits that were paid [by the administrator] so th[e] amount [requested] has changed."  The prosecutor told the court that he "could deal with this through

testimony" and that he had given "a copy to counsel of the updated information this morning." Defendant objected to the increased request "on the basis of lack of notice." The trial court "noted" the objection, and it chose to proceed with the hearing.

¶ 44 The claims adjuster testified at the hearing. During her testimony, the prosecutor offered two exhibits, which reflected the increased amount of restitution to be paid to the administrator. Defendant objected to the exhibits and to the increased amounts contained within them "based on lack of notice." In response, the prosecutor explained that he had discovered that "the amounts we had were a little old" and that he had received updated documents on the morning of the hearing. He then conceded that, if the court wanted to limit the amount of restitution to the previous filing because "there needs to be more notice," he would file an amended request. The prosecutor also told the court that the increased restitution amounts fell "under the rubric of future medical expenses." The prosecutor did not mention any new restitution requests for permanent partial disability.

¶ 45    The trial court overruled defendant's objection based on lack of notice, and it admitted the evidence because the objection dealt only with "a discovery issue."

¶ 46    During her testimony, the claims adjuster discussed the differences between the original request submitted in January 2016 and the updated request produced on the morning of the hearing. As is pertinent to this appeal, the claims adjuster noted that the updated request included payment for permanent partial disability.

¶ 47    At the end of the hearing, the trial court awarded restitution to the administrator for its payment to the trooper of permanent partial disability benefits.

### B.    Permanent Partial Disability Benefits

¶ 48    Defendant submits that the trial court could not order restitution to the administrator for its payment to the trooper of permanent partial disability benefits because it was a "loss of future earnings," which section 18-1.3-602(3)(a) of the restitution statute does not allow. We conclude, for the following reasons, that the permanent partial disability benefits paid to the trooper were not a loss of future earnings under the restitution statute.

¶ 49    We begin with some background concerning workers'
compensation disability benefits.  To explain the permanent
disability benefits at issue in this case, we need to start with a
description of temporary benefits.

¶ 50    Temporary benefits compensate an employee for lost wages
during the employee's recovery from a work-related injury.  §§ 8-42-
105 to -106, C.R.S. 2019.  Temporary total disability benefits
compensate an employee for lost wages after an injury when he or
she is unable to go back to work.  § 8-42-105.  When an employee
is able to return to work, but still not at full capacity, temporary
partial disability benefits compensate an employee for partial lost
wages.  § 8-42-106.  Generally, temporary benefits are available
until the employee reaches maximum medical improvement, which
occurs "when the underlying condition has stabilized to the extent
that no further medical treatment will improve the condition."  *Allee*
*v. Contractors, Inc.*, 783 P.2d 273, 279 (Colo. 1989).

¶ 51    After the employee reaches maximum medical improvement,
he or she may be entitled to receive "permanent partial disability"
benefits.  § 8-42-107, C.R.S. 2019.  There are two types: scheduled

benefits and whole person benefits.  Both types are calculated based on a statutory formula.  *See* § 8-42-107(2), (8)(d).

¶ 52    Section 18-1.3-602(3)(a) of the restitution statute prohibits an award of restitution for "loss of future earnings."  That phrase is not defined by statute, but a division of this court interpreted it to mean "earnings not expected to be received by the victim after restitution is imposed."  *People v. Bryant*, 122 P.3d 1026, 1029 (Colo. App. 2005).  Defendant cites to several Colorado appellate court decisions describing permanent partial disability benefits as compensation for "a loss of future earnings capacity."  *See, e.g., Hussion v. Indus. Claims Appeals Office*, 991 P.2d 346, 348 (Colo. App. 1999).  He therefore asserts that loss of future earnings in the restitution context is the functional equivalent of a loss of future earning capacity in the workers' compensation context.  We are not persuaded.

¶ 53    Despite defendant's contention, the workers' compensation case law is clear: permanent partial disability benefits do not compensate an employee for "actual wage loss that has already occurred or may occur in the *future*."  *Bus. Ins. Co. v. BFI Waste Sys. of N. Am., Inc.*, 23 P.3d 1261, 1265 (Colo. 2001)(emphasis

added). Rather, it compensates an employee for a permanent impairment, which impacts the employee's present and future ability to compete in the labor market. *Id.* ("The workers' compensation system operates on the assumption that the future earning capacity of a partially disabled worker will be less than that of a non-disabled worker.").

¶ 54 And an employee who continues to earn the same — or even more — after reaching maximum medical improvement may still be entitled to permanent partial disability payments. *Vail Assocs., Inc. v. West*, 692 P.2d 1111, 1114 (Colo. 1984). This proposition is true because the employee's entitlement to benefits "must be based upon his employability *in the open labor market* and not merely ascertained in the limited context of his future employability with his present employer." *Hobbs v. Indus. Claim Appeals Office*, 804 P.2d 210, 212 (Colo. App. 1990)(citation omitted).

¶ 55 Defendant relies on a single conclusion in *People v. Oliver*, 2016 COA 180M, to support his position. In *Oliver*, the division noted that, even though death benefits are calculated using the employee's average weekly wage, they are "independent of wage benefits because they are owed to the employee's dependents and

not to the employee herself." *Id.* at ¶ 51. True, the disability benefits in this case are distinguishable from the death benefits in *Oliver* for that reason. But, for the following reasons, we conclude that *Oliver* supports our conclusion that permanent partial disability benefits are compensable under the restitution statute.

¶ 56    In *Oliver*, ¶ 50, the division concluded that death benefits were "out-of-pocket expenses" and "anticipated future expenses" of the workers' compensation administrator in that case, which were both allowable restitution under the definition of "restitution" in section 18-1.3-602(3)(a). In other words, the division determined that the administrator was a victim who had suffered a pecuniary loss proximately caused by the defendant that could "be reasonably calculated in money because it was a monetary payout entirely determined by a statutory formula." *Id.* So the administrator's payout was "just like any other insurance policy payout." *Id.* at ¶ 53.

¶ 57    In this case, disability payments are likewise an insurance policy payout. *See id.*; *see also* § 18-1.3-602(3)(a); *People v. Lunsford*, 43 P.3d 629, 631 (Colo. App. 2001)(noting that an insurer's payout to the victim for "future wage loss" was not

relevant to whether the insurer's "expenditures were actual pecuniary damages"). And the payments were "reasonably calculated in money because [they were] a monetary payout entirely determined by a statutory formula." *Oliver*, ¶ 50; *see* § 8-42-107(2), (8)(d). As the division concluded in *Oliver*, ¶ 52, "[t]he method by which this benefit is calculated is simply not relevant to the question whether [the administrator], as an insurer, can recover through restitution money it paid" to the trooper.

## C. Notice

¶ 58 Defendant asserts that we should remand this case to the trial court for a new hearing because he had no notice of the prosecution's request for restitution to the administrator for permanent partial disability benefits. Although we agree that he was entitled to notice, we conclude that this error was harmless.

¶ 59 "[A] defendant is entitled to adequate notice of the claimed amount of damages and the amount of restitution which the court is asked to impose." *People v. Valdez*, 928 P.2d 1387, 1392 (Colo. App. 1996).

¶ 60 The prosecution asserts that defendant had sufficient notice because he knew that it was seeking restitution for workers'

23

compensation claims and specifically for restitution to reimburse the insurer for "temporary partial disability" and "temporary total disability" benefits paid to the trooper.  We are not persuaded because temporary disability benefits are different from permanent disability benefits.  *Compare* § 8-42-105 (temporary total disability), *and* § 8-42-106 (temporary partial disability), *with* § 8-42-107 (permanent partial disability), *and* § 8-42-111, C.R.S. 2019 (permanent total disability).  Indeed, the prosecution did not simply request an increase in restitution for temporary benefits that the administrator had paid to the trooper; it requested restitution for a previously undisclosed type of disability benefit.  Defendant had no reason to know that the trooper would be entitled to permanent disability benefits simply because he had received temporary benefits.

¶ 61    The prosecution also asserts that, because defendant never specifically asked for a continuance and did not cross-examine the claims adjuster, he was not prejudiced by the late disclosure.  We are not aware of any legal authority that requires a defendant to make a specific request for a continuance or cross-examine a witness in situations like this one.  In fact, the prosecutor

suggested that a continuance would be appropriate. And the lack of cross-examination could be equally as consistent with defendant's lack of notice and opportunity to defend as with a concession that defendant did not want to contest the claims adjuster's testimony.

¶ 62 We conclude that the defendant did not have sufficient notice of the prosecution's request that the court order him to pay restitution to the administrator for the permanent partial disability benefits that it had paid to the trooper. *See People in Interest of J.L.R.*, 895 P.2d 1151, 1153 (Colo. App. 1995). But we conclude, for the following reasons, that we do not have to remand that part of the order to the trial court for a new hearing.

¶ 63 Defendant asserts that the trial court entered the award for permanent partial disability benefits "without adequate notice or an opportunity to be heard on the brand new category of" permanent partial disability benefits. But his only contention on appeal concerning this "brand new category" of benefits is the one that we have already decided in Part IV.B: whether such benefits were lost future earnings that fell outside the scope of the restitution statute. As a result, the court's error was harmless: we have resolved

defendant's challenge to the order requiring him to pay restitution to the administrator for the permanent partial disability benefits that it paid to the trooper, and defendant does not raise any other challenges to that part of the restitution order.

## V. Restitution Order to the Trooper

¶ 64 Defendant contends that the trial court erroneously ordered him to pay $979.41 to the trooper for the mother's travel expenses. We agree.

¶ 65 As discussed above, the prosecution requested restitution to compensate the trooper's mother for her travel expenses. The prosecution's written restitution request stated that the trooper had paid for his mother's travel expenses. The evidence at the hearing, however, showed that the board had reimbursed the mother's travel expenses. But the trial court ultimately denied the prosecution's request for the mother's travel expenses for the reasons noted above in Part III.B.1.

¶ 66 The court then asked the prosecution to file a proposed order that would exclude mother's travel expenses. But the prosecution's order, which the court signed, did not do so. As a result, the

proposed order erroneously requires defendant to pay the trooper $979.41 as restitution for those expenses.

¶ 67 Defendant asserts that we should remand this case to the trial court so it can correct its clerical error under Crim. P. 36, which provides that "[c]lerical mistakes in judgments [and] orders . . . arising from oversight or omission may be corrected by the court at any time." The prosecution concedes the error, and it agrees that the proper remedy is to remand the case to the trial court for correction of the restitution order.

¶ 68 We agree with both the prosecution and defendant, and we therefore reverse the $979.41 restitution award to the trooper for the mother's travel expenses. The trial court shall, on remand, correct the restitution order by deducting this $979.41 payment to the trooper.

## VI. Conclusion

¶ 69 We affirm the part of the court's order requiring defendant to pay restitution to the board and the part of the order requiring defendant to pay restitution to the administrator for permanent partial disability benefits that the administrator paid to the trooper. We reverse the part of the order awarding the trooper $979.41 for

his mother's travel expenses and, on remand, direct the trial court to deduct that amount from the restitution order.

JUDGE TAUBMAN and JUDGE NAVARRO concur.